UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  0:17-cv-60120-KMM

WERTHEIM JEWISH EDUCATION TRUST,
LLC,

       Plaintiff,

v.

DB AG; DEUTSCHE BANK (SUISSE) SA;
DEUTSCHE BANK SOCIEDAD ANÓNIMA
ESPAÑOLA; and DEUTSCHE BANK PRIVATE
WEALTH MANAGEMENT,

       Defendants.

_____/

**DEUTSCHE BANK AG'S MOTION TO DISMISS COMPLAINT**

AKERMAN LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Phone:  (954) 463-2700
Fax:  (954) 463-2224

MILBANK, TWEED, HADLEY &
McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
Phone:  (424) 386-4000
Fax:  (213) 629-5063

*Counsel for Defendant Deutsche Bank AG*

{41284055;1}

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 3

MEMORANDUM OF LAW .......................................................................................... 7

I.    DB AG IS NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA ................... 7

    A.   DB AG Is Not Subject To General Jurisdiction .................................................. 8

    B.   DB AG Is Not Subject To Specific Jurisdiction ................................................. 11

    C.   The Exercise Of Personal Jurisdiction Would Violate Due Process .............................. 12

        1.   DB AG Lacks The Minimum Contacts Necessary For Specific Jurisdiction Under The Due Process Clause ................................................................ 12

        2.   DB AG Lacks The Minimum Contacts Necessary For General Jurisdiction Under The Due Process Clause ................................................................ 13

        3.   Exercising Personal Jurisdiction Over DB AG Would Be Unreasonable .................. 13

II.   FLORIDA IS AN INCONVENIENT FORUM AND THIS ACTION SHOULD BE LITIGATED IN SWITZERLAND .......................................................................... 13

    A.   Switzerland Is An Available And Adequate Alternative Forum ...................................... 14

    B.   The Private Factors Favor Litigation In Switzerland ................................................ 15

    C.   The Public Factors Favor Litigation In Switzerland ................................................ 17

    D.   Plaintiff Can Reinstate This Suit In Switzerland Without Undue Inconvenience Or Prejudice .................................................................... 19

III.  VENUE IN THE SOUTHERN DISTRICT OF FLORIDA IS IMPROPER ...................... 19

IV.  PLAINTIFF HAS FAILED TO JOIN NECESSARY AND INDISPENSABLE PARTIES ......................................................................................... 19

    A.   Mr. Fuhr, Mr. Sutor, and Mrs. Sutor Are "Necessary" Parties ...................................... 20

    B.   The Joinder Of Mr. Fuhr, Mr. Sutor, and Mrs. Sutor Is Not Feasible Because They Are Foreign Nationals Whose Joinder Would Destroy Diversity .......................... 21

    C.   Mr. Fuhr, Mr. Sutor, and Mrs. Sutor Are Indispensable Parties ...................................... 21

V.    THE COURT LACKS SUBJECT MATTER JURISDICTION.............................................. 23

    A.    Diversity Jurisdiction Is Lacking ...................................................................... 23

    B.    Federal Question Jurisdiction Under The Edge Act Or FATCA Is Lacking ................... 24

VI.   PLAINTIFF'S CLAIMS ARE TIME-BARRED.................................................. 25

    A.    The Statutes of Limitations Of Either Switzerland Or Florida Govern ........................... 25

    B.    Swiss Statutes Of Limitations Have Expired .................................................... 25

    C.    Florida Statutes Of Limitations Have Expired.................................................... 26

VII.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DB AG ........................ 26

    A.    Plaintiff Fails to Plead Its Claims, Which Sound in Fraud, With Particularity ............... 27

    B.    Plaintiff's Claims Are Implausible On Their Face ........................................... 28

CONCLUSION ........................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A. v. Lama*,
633 F.3d 1330 (11th Cir. 2011) ........................................................23

*A/S Dan-Bunkering Ltd. v. M/V Centrans Demeter*,
633 Fed. Appx. 755 (11th Cir. 2015).............................................14, 17

*Aldana v. Del Monte Fresh Produce N.A.*,
578 F.3d 1283 (11th Cir. 2009) ........................................................16

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
712 F. 3d 775 (2d Cir. 2013).............................................................24

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .................................................................27, 28

*Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*,
No. 0:15-cv-62104-KMM, 2016 WL 1028332 (S.D. Fla. Mar. 15, 2016)
(Moore, J.)............................................................................7, 8

*Balloveras v. Purdue Pharma Co.*,
04-20360, 2004 WL 1202854 (S.D. Fla. May 19, 2004).......................15

*Bankston v. Burch*,
27 F.3d 164 (5th Cir. 1994) .............................................................24

*Becker v. Davis*,
491 F.3d 1292 (11th Cir. 2007) ("an accounting is a remedy attached to a
separate independent cause of action.")..........................................26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................29

*Bell v. United Air Lines, Inc.*,
No. 11-61393-CIV, 2011 WL 11048116 (S.D. Fla. Nov. 30, 2011) .........19

*Bishop v. Florida Specialty Paint, Co.*,
389 So. 2d 999 (1980).......................................................................18

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
116 F.3d 1364 (11th Cir. 1997) ........................................................27

*Callasso v. Morton & Co.*,
   324 F. Supp. 2d 1320 (Moore, J.) ...................................................................................18

*Carmouche v. Tamborlee Mgmt. Inc.*,
   789 F.3d 1201 (11th Cir. 2015) ...........................................................................9, 10, 13

*Cas. Indem. Exch. v. High Croft Enterprises, Inc.*,
   714 F. Supp. 1190 (S.D. 1989) ................................................................................22, 23

*Cortlandt Street Recovery Corp. v. DB AG, London Branch*,
   No. 14-cv-01568 (JPO), 2015 WL 5091170 (S.D.N.Y. Aug. 28, 2015) .............................1, 11

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)..........................................................................................8, 9, 10

*Dickson Marine, Inc. v. Panalpina*,
   179 F.3d 331 (5th Cir.1999) ........................................................................................15

*FindWhat Investor Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011), *cert denied*, 133 S. Ct. 109 (2012)....................................27

*Ford v. Brown*,
   319 F.3d 1302 (11th Cir. 2003) ....................................................................................13

*Fraser v. Smith*,
   594 F.3d 842 (11th Cir. 2010) ..................................................................................8, 12

*Gilstrap v. Radianz Ltd.*,
   443 F. Supp. 2d 474 (S.D.N.Y. 2006)............................................................................15

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ....................................................................................29

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
   No. 13-23705-CIV, 2015 WL 3377906 (S.D. Fla. May 13, 2015)..........................................11

*Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*,
   669 F. Supp. 2d 1353 (S.D. 2009) ................................................................................19

*Hood v. James*,
   256 F.2d 895 (5th Cir. 1958) .......................................................................................24

*Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*,
   No. 10-61856-CIV, 2012 WL 1638377 (S.D. Fla. May 9, 2012)...........................................21

*Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*,
   704 F.3d 927 (11th Cir. 2013) .....................................................................................25

*ITL Int'l, Inc. v. Walton & Post, Inc.*,
  741 F. Supp. 2d 1313 (S.D. 2010) ......................................................................17

*Johnson v. Pullman, Inc.*,
  845 F.2d 911 (11th Cir. 1988) ...........................................................................26

*Keston v. FirstCollect, Inc.*,
  523 F. Supp. 2d. 1348 (S.D. 2007) ......................................................................8

*Laker Airways, Inc. v. British Airways, PLC*,
  182 F.3d 843 (11th Cir. 1999) ...........................................................................23

*Leon v. Millon Air, Inc.*,
  251 F.3d 1305 (11th Cir. 2001) .........................................................................14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ...............................11

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ...........................................................................7

*Magnin v. Teledyne Cont'l Motors*,
  91 F.3d 1424 (11th Cir. 1996) ...........................................................................18

*Medicor AG v. Arterial Vascular Eng'g*,
  141 F.3d 1177 (9th Cir. 1998) ...........................................................................15

*Orchid Quay, LLC v. Suncor Bristol Bay, LLC*,
  178 F. Supp. 3d 1300, 1303–04 (S.D. 2016) .........................................................23

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) .........................................................................29

*Paolicelli v. Ford Motor Co.*,
  289 Fed. Appx. 387 (11th Cir. 2008)....................................................................18

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952).......................................................................................10

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981).....................................................................13, 14, 15, 17

*Rhein v. Kevelson*,
  No. 14-61830-CIV, 2014 WL 6694744 (S.D. Fla. Nov. 26, 2014) ...................................22, 24

*Satz v. McDonnell Douglas Corp.*,
    244 F.3d 1279 (11th Cir. 2001) ...................................................................14, 18

*Slaihem v. Sea Tow Bahamas Ltd.*,
    148 F. Supp. 2d 1343 (S.D. 2001) ...........................................................................8

*Spear Grp., Inc. v. Florida Power & Light Co.*,
    No. 13-80534-CIV, 2014 WL 272724 (S.D. Fla. Jan. 23, 2014)................................20, 21, 22

*Tarasewicz v. Royal Caribbean Cruises Ltd.*,
    No. 14-CIV-60885, 2015 WL 3970546 (S.D. Fla. Jun. 30, 2015) .........................................15

*Tazoe v. Airbus S.A.S.*,
    631 F.3d 1321 (11th Cir. 2011) ...............................................................16, 17, 19

*Thompson v. Carnival Corp.*,
    174 F. Supp. 3d 1327, 1334 (S.D. 2016) (Moore, J.) ...............................................9, 10

*Triggs v. John Crump Toyota, Inc.*,
    154 F.3d 1284 (11th Cir. 1998) ..............................................................................23

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ................................................................................8

*Warfield v. Marks*,
    190 F.2d 178 (5th Cir. 1951) .................................................................................24

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) .............................................................................15

*Zapata v. Royal Caribbean Cruises, Ltd.*,
    No. 12-21897-CIV, 2013 WL 1100028 (S.D. Fla. Mar. 15, 2013) ........................................11

**Statutes**

12 U.S.C. § 632 ........................................................................................................24

28 U.S.C. § 1332 ......................................................................................................21

28 U.S.C. § 1391 ......................................................................................................19

28 U.S.C. § 1782 ....................................................................................................5, 6

F.S. § 95.11 .............................................................................................................26

Federal Reserve Act §25A ......................................................................................24

Fla. Stat. Ann. § 48.193(1)(a)(1) ...........................................................................11

{41284055;1}

Fla. Stat. Ann. § 48.193(2) ............................................................................................8

Fla. Stat §48.193 ...........................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................26, 27, 28

Fed. R. Civ. P. 12(b)(1), (2), (3), (6), and (7) ...........................................1, 26, 27

Fed. R. Civ. P. 19 ...................................................................................................19, 21

Fed. R. Civ. P. 19(a) ......................................................................................................20

Fed. R. Civ. P. 19(a)(1)(B) ..........................................................................................20

Fed. R. Civ. P. 19(a)(1)(B)(i-ii) ...................................................................................21

Fed. R. Civ. P. 19(b) .........................................................................................21, 22, 23

Local Rules Rule 7.1 ........................................................................................................1

Public Law 111-147 (111th Congress), Title V, Subtitle A, Sec. 501 et seq. ..............25

Restatement (Second) of Conflict of Laws § 145(2) (1971).........................................18

Pursuant to Rules 12(b)(1), (2), (3), (6), and (7) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of the Southern District of Florida, defendant Deutsche Bank AG ("<u>DB AG</u>"), by counsel, hereby moves this Court for the entry of an Order dismissing all claims and causes of action asserted against DB AG[1] in the Complaint.

## INTRODUCTION

This lawsuit is the latest in a series of meritless proceedings brought against Deutsche Bank entities by individuals and entities who claim to own rights to a purportedly massive, long lost estate of a German family whose last heir died 27 years ago.  Four federal courts, and a total of six federal judges, have halted various claims brought by so-called Wertheim heirs against DB AG—including some of the same individuals, entities, and counsel associated with this latest action.

This case is brought by an LLC that was created in December 2016, just a few weeks before the Complaint was filed.  This newly created Plaintiff, just like the plaintiffs in prior unsuccessful proceedings, seeks to pursue alleged inheritance rights to the estate of Dr. Ambrosius Wolfgang Bäuml ("<u>Bäuml</u>"), a German national and alleged "last heir" of the Wertheim family.  Bäuml died in 1990, in Germany.  Compl. ¶ 119.  Plaintiff alleges, just like the plaintiffs in prior proceedings, that in the early 1990s Luis Garnier Marimón ("<u>Marimón</u>"), a Spanish national and former attorney at Deutsche Bank Sociedad Anónima ("<u>DB Spain</u>"), worked together with officers from Deutsche Bank (Suisse) SA ("<u>DB Suisse</u>") to steal funds belonging to Bäuml.  *Id.* ¶ 144.  According to Plaintiff, and prior plaintiffs, in 1993 those funds were improperly transferred in Switzerland from one Swiss bank account, maintained by Credit

---

[1] This motion is brought on behalf of DB AG, the only Deutsche Bank defendant to have been served in this action.  The undersigned reserves the right to seek dismissal of the complaint against the other unserved Deutsche Bank defendants if service is validly completed upon them.

Suisse, into another Swiss bank account, maintained by DB Suisse. *Id.* Plaintiff purports to seek recovery on behalf of all owners of rights to Bäuml's estate, and a majority of those rights are owned by residents of Germany and Spain. *Id.* ¶ 11. Plaintiff contends that its primary claims are governed by foreign law. *Id.* ¶ 18 n.10. Plaintiff's allegations have *absolutely nothing* to do with Florida or even the United States.

The Complaint should be dismissed for several reasons.

*First*, DB AG, a German bank whose principal place of business is in Germany, is not subject to personal jurisdiction in Florida.

*Second*, Florida is an inconvenient forum that has no relevant connection to the facts that give rise to the Complaint. If this lawsuit should proceed anywhere, it is Switzerland: the jurisdiction where the alleged 1993 Swiss bank account transfer took place.

*Third*, venue is not proper in the Southern District of Florida. DB AG does not reside here, the events that underlie this action did not occur here, and DB AG is not subject to personal jurisdiction here.

*Fourth*, Plaintiff has failed (for obvious tactical reasons) to join to this action three necessary and indispensable parties who are aliens—Tim Fuhr, Rudolf Sutor, and Giselheide Sutor—and who Plaintiff alleges own the majority of the alleged inheritance rights.

*Fifth*, the Court lacks subject matter jurisdiction because complete diversity does not and cannot exist. DB AG is a resident of Germany. The joinder of necessary and indispensable parties, Mr. Fuhr and Mr. and Mrs. Sutor, who reside in Europe, would cause aliens to be present on both sides of this litigation, destroying diversity jurisdiction. In addition, Plaintiff's claimed bases for federal question jurisdiction fail because neither the Edge Act nor FATCA applies to this action.

{41284055;1}

2

*Sixth*, Plaintiff's claims are time-barred under the applicable statutes of limitation of both Switzerland and Florida.

*Finally*, the Complaint fails to state a claim against DB AG.  Plaintiff's claims sound in fraud, but Plaintiff fails to plead those claims against DB AG with particularity.  In addition, Plaintiff's tale of a vast European conspiracy to loot a fortune comprised of "secret" accounts now valued at $3 billion is implausible on its face.  Moreover, Plaintiff states its allegations are based upon exhibits to the Complaint that supposedly provide the basis for the transfer of a fortune into an account at DB Suisse, but the exhibits on which the Complaint relies say nothing of the sort.

For all of these reasons, the Complaint should be dismissed with prejudice.

## RELEVANT BACKGROUND

The history of the transfer of rights to the Bäuml estate is revealing.  Much of that history is set forth in a handful of the 27 exhibits attached to the Complaint, most of which are in languages other than English and which Plaintiff has not translated.   For the Court's convenience, DB AG has obtained certified translations of Plaintiff's exhibits.   All of the exhibits, substituting certified English-language translations where necessary, are attached as Exhibits 1 through 27 to DG AG's motion—*i.e.*, in the same numbering used by Plaintiff.

As the exhibits demonstrate, the alleged rights originally passed to a married couple, Rudolf and Giselheide Sutor, upon Bäuml's death in 1990.  *See* Ex. 18 (certified translation of Plaintiff Ex. 18), at 5 of 6.  Mr. and Mrs. Sutor are residents of Spain.  *See* Ex. 2 (reproduction of Plaintiff Ex. 2), at 2 of 2.  In 2012, Mr. and Mrs. Sutor "sold" their inheritance rights to Tim Fuhr, a German national.  *See* Ex. 3 (certified translation of Plaintiff Ex. 3), at 4 of 45.  Fuhr paid the Sutors *nothing* for these rights.  *See id.*, at 5 of 45.  He instead has a contingency agreement

with them.  *See id.*  The contingency agreement states that the alleged inheritance rights were conveyed to Fuhr to "search for, find and realize any as yet unrealized assets."  *See id.*, at 4 of 45.  It further states that in return, Fuhr promises to give the Sutors 25 percent "of the assets found and realized out of the estate."  *See id.*, at 12 of 45.  Fuhr apparently hopes his methods of "looking for, finding and realizing assets" will make him not only wealthy, but famous:  the contingency agreement specifies that Fuhr's "purchase" includes "all rights of exploitation of film and book rights" concerning the unrealized assets.  *See id.*, at 5 of 45.

After receiving the rights on a contingency basis, Fuhr began to parcel out sub-portions to other individuals and entities for the purpose of bringing lawsuits against Deutsche Bank and other entities in the United States.  *See* Ex. 3, at 15-35 of 45.  And thus began years of claims against DB AG and its affiliates based on allegations about a Wertheim family fortune, Bäuml, and theft via a 1993 Swiss bank account transfer.  This Complaint is the latest re-telling of that tale.  A chart setting forth the prior claims and their outcomes is included within DB AG's Request for Judicial Notice ("RJN") filed contemporaneously herewith.

Fuhr first parceled out a portion of the alleged inheritance rights in September 2012, to Edward Fagan.  Mr. Fagan is a disbarred lawyer and a serial plaintiff whose many misdeeds are well chronicled in publicly available sources.  Fagan immediately filed a complaint—on behalf of himself and an entity called the "Interest Association of Wertheim Heirs"—against DB AG and other entities in the Central District of California.  *See* RJN at Ex. A.  The allegations of the Central District of California action were almost identical to the core allegations here.  Fagan and the Interest Association of Wertheim Heirs sought over $1 billion in damages.  *Id.*

Fuhr then parceled out a portion of the inheritance rights to "Friends of LBS," a South Carolina entity.  *See* Ex. 3, at 16-17 of 45.  Friends of LBS is a member of the newly created

Plaintiff in the case presently before this Court.  *See* Ex. 2, at 2 of 2.  In late 2012, Friends of LBS and Fuhr filed a motion to intervene in the Central District of California action, and in their papers re-stated the allegations made by Fagan and the Interest Association of Wertheim Heirs. *See* RJN at Ex. C.  Fagan's complaint was dismissed for improper venue and lack of standing in 2013.  *See id*. at Ex. B.  And the motion of Friends of LBS and Fuhr to intervene was denied, with the court concluding it saw "no reason to allow Fuhr [and Friends of LBS] to intervene in . . . the already questionable proceedings."  *See id.* at Ex. D.

Marimón, the former DB Spain lawyer who by this point had been repeatedly accused by Fuhr and his collaborators of stealing from Bäuml, brought a defamation action against Fuhr in Germany.  In 2013, Fuhr filed in the Southern District of Florida a petition under 28 U.S.C. § 1782, seeking discovery from DB AG in purported support of his defense of that case.  *See id*. at Ex. E.  Fuhr's petition repeated the allegations made in the Central District of California action, and asked the Southern District of Florida to order DB AG to collect and produce relevant documents concerning the supposed DB Suisse account and the supposed Swiss account transfer. *See id*.  The Southern District of Florida denied Fuhr's petition in 2014, holding that DB AG could not be "found" in this District for purposes of 28 U.S.C. § 1782.  *See id*. at Ex. F.

Undeterred, Fuhr next filed essentially the same 28 U.S.C. § 1782 petition—making the same allegations—against DB AG in the Southern District of New York.  *See id*. at Ex. G. Kenneth McCallion, counsel to the newly created Plaintiff in this current action, represented Fuhr in connection with that petition.  *See id*.  The Southern District of New York denied Fuhr's petition in 2015, holding that Fuhr was actually seeking discovery from DB Suisse:  an entity that lacks a presence in the Southern District of New York.  *See id*. at Ex. H.  The court further held that Fuhr was seeking discovery located outside the United States, which the court held 28

U.S.C. § 1782 does not permit, and that Fuhr was improperly attempting to circumvent foreign discovery rules.  *See id.*  Fuhr, again represented by Mr. McCallion, appealed the ruling to the Second Circuit.  The Second Circuit affirmed the district court's decision.  *See id.* at Ex. I.

The exhibits to the Complaint reveal that, in what DB AG assumes was an effort to manufacture ties to Florida for the purpose of bringing a new action in this District, in April 2016 Friends of LBS transferred a portion of its rights to Chabad of Greater Fort Lauderdale Inc. ("Chabad"), a Florida entity.  *See* Ex. 3, at 26 of 45.  In September 2016, Fagan transferred all of his rights to American Friends of JCC, Inc. ("JCC"), a New York entity.  *See id.*, at 39 of 45.

Friends of LBS, Chabad, and JCC formed the Plaintiff as a Florida LLC on December 21, 2016, and are apparently the members of the Plaintiff.[2]  *See* Ex. 2, at 2 of 2.  Fuhr and the Sutors, who, as noted, are residents of Germany and Spain respectively, are *not* members of Plaintiff and have not been joined as Plaintiffs in this action.  *Id.*  The exhibits to the Complaint indicate that, as of today, Fuhr owns 57.5% of the alleged inheritance rights to the Bäuml estate.  *See* Ex. 3. The Sutors, in turn, are entitled to 25% of the "found assets and realized claims" related to the estate, and if no assets are found or claims realized by August 2, 2020, all inheritance rights revert to the Sutors.  *See id.* at 12 of 45.  The members of the Plaintiff own a minority of the alleged inheritance rights, with Friends of LBS owning 32.5%, Chabad owning 5%, and JCC owning 5%.  *See id.*

---

[2] Division of Corporations – Florida Department of State, *Wertheim Jewish Education Trust L.L.C.*, *available* at
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName
&directionType=Initial&searchNameOrder=WERTHEIMJEWISHEDUCATIONTRUST%20L1
60002302770&aggregateId=flal-l16000230277-a7d564a8-2bb3-418d-a480-
c74dacbaed7d&searchTerm=Wertheim&listNameOrder=WERTHEIM%208269840 (last visited
Mar. 27, 2017).

On January 18, 2017, just a few weeks after the Plaintiff was formed, Plaintiff filed the Complaint "on behalf of all lawful heirs to the Wertheim/Bäuml assets." *See* Compl. ¶ 11.

## MEMORANDUM OF LAW

### I.  DB AG IS NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA

DB AG does not have sufficient contacts to render it subject to personal jurisdiction in Florida.  DB AG is a German bank, based in Germany.  Its limited presence in this State has nothing to do with Plaintiff's claims, which concern alleged events that occurred in Europe in the 1990s.  On these facts, the Court lacks personal jurisdiction over DB AG, and the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice.

"Because federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons . . . a federal court sitting in Florida must conduct a two-step inquiry to determine whether it has personal jurisdiction over a non-resident defendant." *Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 0:15-cv-62104-KMM, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016) (Moore, J.) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)).  The first step is to determine "whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).  Under Fla. Stat §48.193, "a Florida court can exercise general personal jurisdiction . . . if the defendant engages in 'substantial and not isolated activity in Florida.'" *Atmos Nation LLC*, 2016 WL 1028332, at *2 (quoting *Schulman v. Inst. For Shipboard Educ.*, 624 Fed. Appx. 1002, 1005 (11th Cir. 2015)).  Alternatively, under the statute, "a Florida court can exercise specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—if the claim asserted against the defendant arises

from the defendant's contacts with Florida, and those contacts fall within one of nine statutorily enumerated categories set forth in section 48.193(1)(a)." *Id.*

If personal jurisdiction exists, the second step is for the court to determine whether the exercise of jurisdiction "would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Id.* The court must determine whether the defendant has established sufficient "minimum contacts" with the State of Florida such that the exercise of jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *See id.* (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).[3] Both requirements must be satisfied. *Slaihem v. Sea Tow Bahamas Ltd.*, 148 F. Supp. 2d 1343, 1349 (S.D. 2001).

DB AG is not subject to personal jurisdiction in Florida under these standards.

### A.    DB AG Is Not Subject To General Jurisdiction

The Court can assert general jurisdiction over DB AG only if DB AG is "engaged in substantial and not isolated activity within [the] state. . . ." Fla. Stat. Ann. § 48.193(2). This inquiry is coextensive with "the limits on personal jurisdiction imposed by the Due Process Clause," *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010), and is satisfied where the

---

[3] The party seeking to impose personal jurisdiction over a non-resident defendant bears the burden of alleging sufficient facts to make out a prima facie case for jurisdiction, *see United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009), and "any doubts about the applicability of the [long-arm] statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1352 n.2 (S.D. 2007). Moreover, even if the Court finds that the Complaint's allegations satisfy plaintiff's initial burden, where, as here, the defendant submits a declaration contesting personal jurisdiction and establishing facts evidencing the absence of jurisdiction, "the burden shifts back to the plaintiff, this time requiring the plaintiff to prove—not merely allege—jurisdiction by affidavits, testimony, or other documents." *Atmos Nation LLC*, 2016 WL 1028332, at *3 (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214-15 (11th Cir. 1999)).

defendant's contacts with Florida are "so continuous and systematic as to render [the defendant] essentially at home in the forum state." *Daimler*, 134 S. Ct. at 754 (quotation omitted).

*Daimler*, as this Court has recognized, "recently made a sweeping declaration 'that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.'" *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1334 (S.D. 2016) (Moore, J.). "This dramatic change in the personal jurisdiction landscape" (*id*. at 1336) "reinforced that there are two 'paradigm bases' for asserting general jurisdiction over a corporation: its place of incorporation and its principal place of business." *Daimler*, 134 S. Ct. at 759-60. *Daimler* "further determined that 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business' will be 'so substantial and of such a nature as to render the corporation at home in that State' only in 'exceptional' cases." *Thompson*, 174 F. Supp. 3d at 1334 (quoting *Daimler*, 134 S. Ct. at 761 n.19). The 11th Circuit has embraced this "cabined conception" of personal jurisdiction. *See, e.g., Carmouche v. Tamborlee Mgmt. Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015) ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business."); *Thompson*, 174 F. Supp. 3d at 1336.

DB AG is not remotely "at home" in Florida. As Plaintiff acknowledges, and the accompanying Declaration of Vijay Dewan in Support of Deutsche Bank AG's Motion to Dismiss ("Dewan Decl.") confirms, DB AG's place of incorporation is Germany. *See* Compl. ¶ 13; Dewan Decl. ¶ 4. Germany is also DB AG's principal place of business. Dewan Decl. ¶ 12. As of December 2016, DB AG employed just 10.6% of its full-time employees in the U.S. *Id*. ¶ 10. DB AG's physical presence in Florida is limited to a single international administrative

office located in Jacksonville, Florida ("Jacksonville IAO"), which markets and solicits products offered by DB AG's New York branch to consumers located in the U.S. and performs middle and back office functions for DB AG and its U.S.-based banking subsidiaries. *Id*. ¶ 13. The Jacksonville IAO was not opened or authorized to transact business in Florida until 2014—long after the alleged events that gave rise to this action. *Id*. DB AG has officers at the Jacksonville IAO, but no employees. *Id*. DB AG has no other offices or any other physical presence in Florida. *Id*. ¶ 14. These facts do not come close to constituting the "exceptional" case where a foreign corporation is subject to personal jurisdiction in a U.S. court.[4]

Courts in this Circuit have routinely dismissed cases for lack of personal jurisdiction where the defendant had similar—or even more—contacts with the forum state than are present here. For example, in *Carmouche* the court dismissed a complaint against a Panamanian defendant even though that defendant:  held Florida bank accounts, had Florida addresses, purchased insurance from Florida companies, filed financing statements with the Florida Secretary of State, was a member of a Florida-based non-profit trade organization, and consented to the Southern District of Florida's jurisdiction for all lawsuits arising out of the agreements at issue in the case. 789 F.3d at 1204. Despite all of that, the court concluded that the Panamanian defendant lacked connections to Florida that were "so substantial as to make this one [of] those

---

[4] The Supreme Court in *Daimler* held out *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) as an example of such an exceptional case. In *Perkins*, a Philippine corporation was sued in Ohio on a claim having no relation to the corporation's Ohio activities. *Id*. at 438. But at the time the Phillipine corporation was sued, war in the Pacific had forced the corporation to cease its Philippine operations and to conduct its business from an interim Ohio headquarters. *Id*. at 447-48. The Court held that jurisdiction was not inconsistent with due process, *id*. at 448, because, as the Court has since explained, "Ohio was the corporation's principal, if temporary, place of business." *Daimler*, 134 S. Ct. at 756 (quotation omitted). DB AG's principal place of business, by contrast, is thousands of miles away from Florida.

'exceptional' cases in which a foreign corporation is 'at home' in a forum other than its place of incorporation or principal place of business."). *Id.* at 1205.[5]

The Court thus lacks general jurisdiction over DB AG.[6]

## B.     DB AG Is Not Subject To Specific Jurisdiction

Because Plaintiff does not contend that the alleged events that gave rise to its suit confer specific personal jurisdiction over DB AG, the Court need not reach the issue.  The argument fails regardless.

In order for the Court to have specific personal jurisdiction over DB AG, the Court must find that DB AG engaged in business activity in Florida that is connected to the harm alleged in the Complaint.  Fla. Stat. Ann. § 48.193(1)(a)(1); *see Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-CIV, 2013 WL 1100028, *5 (S.D. Fla. Mar. 15, 2013) (dismissing for lack of personal jurisdiction due to lack of nexus between alleged tort and defendant's business activities

---

[5] *See also Thompson*, 174 F. Supp. 3d at 1335 (dismissing case after finding that St. Kitts-based defendant's contractual relationships with Florida corporation, Florida bank accounts, relationship with the Florida Caribbean Cruise Association, agreements to indemnify Carnival Cruise Lines, and consent to jurisdiction in the Southern District of Florida did not render defendant "at home" in Florida for purposes of general jurisdiction); *Hard Candy, LLC v. Hard Candy Fitness, LLC*, No. 13-23705-CIV, 2015 WL 3377906, at *18 (S.D. Fla. May 13, 2015) (no general jurisdiction under Florida long-arm statute where defendants were not incorporated in Florida, were not residents of Florida, did not have a principal place of business in Florida, and did not have continuous and systematic contacts in Florida).

[6] Courts in the Southern District of New York, where DB AG has a greater presence than it does in Florida, have refused to find general jurisdiction over DB AG, notwithstanding the presence of DB AG branch offices, thousands of employees, and other routine operations in that forum.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *21 n. 43 (S.D.N.Y. Aug. 4, 2015) (dismissing complaint against DB AG for lack of personal jurisdiction despite substantial business in New York); *Cortlandt Street Recovery Corp. v. DB AG, London Branch*, No. 14-cv-01568 (JPO), 2015 WL 5091170, at *4 (S.D.N.Y. Aug. 28, 2015) ("DBAG is incorporated under the laws of Germany and has its principal place of business in Frankfurt, Germany. DBAG is not 'at home' in New York, and exercising general jurisdiction would not comport with the requirements of due process"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *27 n. 43 (S.D.N.Y. Oct. 20, 2015) (same).

{41284055;1}

in Florida).   Here, Plaintiff's causes of action arise from alleged events in Europe over two decades ago, not from any contact with Florida.   *See* Compl. ¶ 51 ("During this relocation of the company and its business to Spain, Karl Wertheim also relocated the financial assets to Switzerland."); *id*. ¶ 130 ("Prior to his death, Dr. Bäuml told the Sutors [about]. . . the large assets held by his trustee bank in Switzerland."); *id*. ¶ 144 ("During the period from June 17, 1992 until January 25, 1993, Deutsche Bank officials . . . at [DB Suisse] . . . concealed evidence . . . and cooperated with [Marimón] in the transfer of assets" located in Swiss banks); *id*. ¶ 248(c) (Plaintiff seeks information regarding "the meetings between 1990 and 1993 involving Marimón and Diehr and Espinosa at [DB Suisse] regarding the transfer of assets at Credit Suisse to [DB Suisse]. . . .").

The Court thus lacks specific jurisdiction over DB AG.

**C.      The Exercise Of Personal Jurisdiction Would Violate Due Process**

Even if personal jurisdiction over DB AG existed under Florida's long-arm statute (it does not), the exercise of jurisdiction here would violate due process.   "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."   *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citation and quotation omitted).   Minimum contacts with Florida are absent here.

**1.      DB AG Lacks The Minimum Contacts Necessary For Specific Jurisdiction Under The Due Process Clause**

In order to establish minimum contacts, (1) "the defendant must have contacts related to or giving rise to the plaintiff's cause of action"; (2) "the defendant must, through those contacts, have purposefully availed itself of forum benefits"; and (3) "the defendant's contacts with the

forum must be such that it could reasonably anticipate being haled into court there." *Id*.  As discussed, DB AG's limited contacts with Florida have nothing to do with Plaintiff's claims.

### 2. DB AG Lacks The Minimum Contacts Necessary For General Jurisdiction Under The Due Process Clause

A foreign corporation's activities in a forum State must be "so 'continuous and systematic' as to render [the foreign corporation] essentially at home in the forum State" to satisfy the minimum contacts analysis.  *Carmouche*, 789 F.3d at 1204 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)).  As discussed, DB AG's activities in Florida fall well short of this standard.

### 3. Exercising Personal Jurisdiction Over DB AG Would Be Unreasonable

In light of the above, forcing DB AG to litigate Plaintiff's claims in Florida would violate traditional notions of fair play and substantial justice.  Plaintiff was created a few months ago for the apparent purpose of attempting to bring this claim, which concerns an alleged transfer of assets between two Swiss banks in 1993.  Most if not all of the witnesses relevant to DB AG's defense would be located outside of Florida.  So would any relevant documents.  Exercising jurisdiction in these circumstances would be inequitable.

## II. FLORIDA IS AN INCONVENIENT FORUM AND THIS ACTION SHOULD BE LITIGATED IN SWITZERLAND

While the lack of personal jurisdiction over DB AG is dispositive, this action should separately be dismissed on *forum non conveniens* grounds.  That doctrine "authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum."  *Ford v. Brown*, 319 F.3d 1302, 1306-07 (11th Cir. 2003).  "[T]he central focus of the *forum non conveniens* inquiry is convenience."  *Piper Aircraft Co. v.*

{41284055;1}

13

*Reyno*, 454 U.S. 235, 249 (1981).   In order to demonstrate that a forum is inconvenient, a moving party must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.  *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001).  DB AG easily satisfies this test.

A.      **Switzerland Is An Available And Adequate Alternative Forum**

If this action should proceed in any forum, that forum is Switzerland:  the place where the core underlying facts are alleged to have occurred.  An alternative forum is "available" to the plaintiff when the foreign court can assert jurisdiction over the litigation at issue.  *See Leon*, 251 F.3d at 1311.  "The alternative forum prong of the analysis generally will be satisfied when the defendant is amenable to process in the other jurisdiction."  *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001).  DB AG would consent to Swiss jurisdiction if this case were dismissed on *forum non conveniens* grounds and Plaintiff re-filed in Switzerland.  Switzerland is thus "available" as an alternative forum.

An alternative forum must also be adequate, and Switzerland is.  "It is only in 'rare circumstances' where 'the remedy offered by the other forum is clearly unsatisfactory' that [courts] will consider an alternative forum inadequate."  *A/S Dan-Bunkering Ltd. v. M/V Centrans Demeter*, 633 Fed. Appx. 755, 758 (11th Cir. 2015) (quoting *Aldana v. Del Monte Fresh Produce N.A.*, 578 F.3d 1283, 1290 (11th Cir. 2009)).  A remedy is inadequate when it amounts to "no remedy at all."  *Piper Aircraft*, 454 U.S. at 254.  As discussed in the accompanying Declaration of Prof. Dr. Peter Nobel in Support of Deutsche Bank AG's Motion to Dismiss (the "Nobel Decl."), Switzerland has a well-established and developed legal system, would permit litigation of the subject matter of this dispute, and provides a plaintiff with

{41284055;1}

14

adequate procedural safeguards.  Nobel. Decl. ¶¶ 14-18, 24, 33-36, 42.  Moreover, numerous courts have found that Switzerland is an adequate forum.[7]

### B.    The Private Factors Favor Litigation In Switzerland

To determine whether the balance of convenience favors Switzerland, the Court must weigh private factors such as "access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Piper Aircraft*, 454 U.S. 235, 241 n.6 (quotation omitted).

As a preliminary matter, Plaintiff's choice of forum should not be accorded deference for several reasons:  Plaintiff's creation less than one month before this action was filed strongly suggests forum shopping;[8] Plaintiff brings this action in a representative capacity;[9] and the "operative facts underlying the action occurred outside the district in which the action is brought."  *Balloveras v. Purdue Pharma Co*., 04-20360, 2004 WL 1202854, at *1 (S.D. Fla. May 19, 2004).  In any event, any deference to Plaintiff's choice of forum ultimately yields to

---

[7] *See, e.g., Yavuz v. 61 MM, Ltd*., 576 F.3d 1166, 1177 (10th Cir. 2009) (*forum non conveniens* supported dismissal of action in favor of adjudication in Switzerland even though Switzerland might not provide identical remedies); *Dickson Marine, Inc. v. Panalpina*, 179 F.3d 331, 342 (5th Cir.1999) (Switzerland is an adequate alternative forum that "does recognize causes of action for both contract and tort"); *Medicor AG v. Arterial Vascular Eng'g*, 141 F.3d 1177, (9th Cir. 1998) (affirming dismissal in favor of litigation in Switzerland and noting "Switzerland offers a clearly adequate forum.").

[8] *See, e.g., Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2015 WL 3970546, at *12 (S.D. Fla. Jun. 30, 2015) ("[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a [FNC] motion by showing that convenience would be better served by litigating in another country's courts."), quoting *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

[9] *See, e.g., Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("Plaintiffs' choice of forum is also entitled to less deference where, as here, they are suing in a representative capacity."); *see also* Compl. ¶ 11.

{41284055;1}

convenience, and Switzerland is an obviously more convenient forum.  *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) (affirming dismissal of U.S. citizen's action on *forum non conveniens* grounds where private interest factors outweighed deference to chosen forum) (citing *Piper Aircraft*, 454 U.S. at 255 n.23).

Indeed, the private factors favor the adjudication of this action in Switzerland.  Relevant witnesses would be located in Switzerland and perhaps elsewhere in Europe, and many would not be subject to this Court's compulsory process.  None would be located in Florida.  The cost of obtaining the attendance of those witnesses willing to come to Florida to testify would be enormous.  And English would likely not be the language of these witnesses.

Similarly, relevant documents concerning the alleged Swiss bank account transfer would be located in Switzerland, not Florida.  Such documents would almost certainly be in French, Italian, or German (the official languages of Switzerland), and thus would require expensive translation for a litigation in Florida.

Put simply, forcing DB AG to defend itself in Florida—half a world away from the relevant conduct, the relevant witnesses, and the relevant documents—would be "unusually extreme" and would result in "material injustice."  *See, e.g., Aldana*, 578 F.3d at 1293-94 (affirming dismissal in favor of Guatemalan forum where (i) misconduct occurred in Guatemala, (ii) vast majority of evidence was located in Guatemala, (iii) all witnesses other than appellants were located in Guatemala, (iv) Guatemalan witnesses could not be compelled to attend a U.S. proceeding, and (v) other practical and legal difficulties, including translation issues, were present.[10]

---

[10] *See also Tazoe*, 631 F.3d at 1331-33 (affirming dismissal of action in favor of Brazilian forum where, among other things, (i) key evidence located in Brazil, (ii) likely Brazilian witnesses were outside of court's subpoena power, and (iii) trial would entail significant translation costs);

The private factors weigh decidedly in favor of Switzerland.

## C.     The Public Factors Favor Litigation In Switzerland

As explained in *Piper Aircraft*, 454 U.S. at 241 n.6, courts also look at a number of public factors when assessing the balance of convenience.   All of the public factors favor Switzerland.

*Administrative Burden.*   "The Southern District of Florida is a very busy district."   *ITL Int'l, Inc. v. Walton & Post, Inc.*, 741 F. Supp. 2d 1313, 1317 (S.D. 2010).   In Switzerland, it would take only approximately one year for a lawsuit such as this one to proceed from filing to trial.   Nobel Decl. ¶ 14.

*Local Interest In The Dispute.*   The Complaint alleges wrongdoing concerning Swiss bank accounts.   Switzerland and its courts have a strong interest in allegations of unlawful acts allegedly committed by banks located within Switzerland.   As the Supreme Court has noted, there is a "local interest in having localized controversies decided at home."   *Piper Aircraft*, 454 U.S. at 260; *see also A/S Dan-Bunkering Ltd.*, 633 Fed. Appx. 755, 759 (11th Cir. 2015) (U.S. interest in matter insufficient where relevant events occurred in Hong Kong and relevant documents, parties, and witnesses located abroad); *Tazoe*, 631 F.3d at 1334 (noting foreign sovereign's strong interest in dispute when "the injury occurs on home soil").   In contrast, Florida has no remotely comparable interest in the subject matter of this case.

*Relationship Of Governing Law To The Forum.*   Because the relevant transfers are alleged to have taken place in Switzerland, Swiss law applies to Plaintiff's core claims.[11]   *See*

---

*Montgomery*, 945 F. Supp. 2d at 1375-76 (noting that "[p]erhaps the most important private interest of the litigants is access to evidence," and dismissing action where virtually all evidence located in Bahamas and testimony of key Bahamian witnesses could not be compelled).

[11] Florida has adopted the "significant relationship test" of the Restatement (Second) of Conflicts of Law, which requires a court to determine controversies in accordance with the law of

{41284055;1}

*Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) (public interest factors favor dismissal where court would have to "untangle problems . . . in law foreign to itself.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)); *Satz*, 244 F.3d at 1284 (the "*possibility* that district court would have to apply Argentine law to decide [the] case" favored dismissal on *forum non conveniens* grounds (emphasis added)).   The Court should not be required to determine and apply Swiss law to claims that lack any connection to this forum.

 *Unfairness Of Burdening Citizens With Jury Duty.*   It would be unfair to ask Florida citizens to serve in a trial with no connection to the U.S., and to deal with testimony and documents that would require cumbersome translation.  *See Paolicelli v. Ford Motor Co.*, 289 Fed. Appx. 387, 391 (11th Cir. 2008) ("Juries in the three countries, as opposed to jurors that live in the Southern District of Florida, have a greater interest in and connection to the accidents."); *Callasso v. Morton & Co.*, 324 F. Supp. 2d 1320, 1332 (Moore, J.) ("Hearing cases that have no interest to the United States would exacerbate docket congestion, would impose costs on the community in terms of judicial resources and jury duty, would foster the need to 'untangle problems of conflicts of laws and to decide cases in law foreign' to the court, and would conflict with the general interest in having localized interest decided at home." (quotation omitted)).

---

jurisdiction with the "most significant relationship to the occurrence and the parties."  *See Bishop v. Florida Specialty Paint, Co.*, 389 So. 2d 999, 1001 (1980).  The test analyzes (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  Restatement (Second) of Conflict of Laws § 145(2) (1971).

### D.    Plaintiff Can Reinstate This Suit In Switzerland Without Undue Inconvenience Or Prejudice

DB AG has not placed any impediments to reinstatement and will consent to Swiss jurisdiction.  *Tazoe*, 631 F.3d at 1333 (no undue burden where defendants stipulated they would allow plaintiffs to reinstate suit in Brazil).

## III.    VENUE IN THE SOUTHERN DISTRICT OF FLORIDA IS IMPROPER

Venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action, if there is no district in which an action may otherwise be brought.  28 U.S.C. § 1391.  Plaintiff bears the burden of showing that venue is proper.  *See Bell v. United Air Lines, Inc.*, No. 11-61393-CIV, 2011 WL 11048116, at *1 (S.D. Fla. Nov. 30, 2011).  Plaintiff cannot meet its burden.

As discussed, DB AG is not a resident of Florida.  None of Plaintiff's alleged damages claims occurred in Florida.  And DB AG is not subject to personal jurisdiction in Florida.  *See, e.g., Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1358 (S.D. 2009) (venue improper where plaintiff failed to allege relevant conduct occurred in Southern District of Florida).  Venue in the Southern District of Florida is thus improper.

## IV.    PLAINTIFF HAS FAILED TO JOIN NECESSARY AND INDISPENSABLE PARTIES

Plaintiff is an LLC that purports to bring claims on behalf of *all* purported Wertheim heirs.  *See* Compl. ¶ 11.  But only *some* of those heirs are alleged to be members of Plaintiff.  Fed. R. Civ. P. 19 prescribes the circumstances under which an absentee party must be joined in

an action.  Where, as here, joinder is "necessary," but is not "feasible," a court can and should exercise its discretion and dismiss a claim.  *See, e.g., Spear Grp., Inc. v. Florida Power & Light Co.*, No. 13-80534-CIV, 2014 WL 272724, at *2 (S.D. Fla. Jan. 23, 2014) (dismissing complaint for failure to join indispensable party).  The compulsory joinder rule requires consideration of (1) whether the absentee is a "necessary" party under Rule 19(a) for just adjudication, (2) whether joinder of a "necessary" party is feasible, and (3) if such joinder is not feasible, whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed"—*i.e.*, whether the parties are indispensable to the action.  Fed. R. Civ. P. 19(a) & (b).

### A.   Mr. Fuhr, Mr. Sutor, and Mrs. Sutor Are "Necessary" Parties

An absent party is "necessary" when, *inter alia*, the party "claims an interest relating to the subject of the action" and is so situated that disposing of the action without joining the absentee will (i) "as a practical matter impair or impede the person's ability to protect the interest" or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B).

Plaintiff seeks a complete recovery on behalf of all purported owners of rights to the Bäuml estate.  *See* Compl. ¶ 11.  The Complaint alleges a total of six owners of those rights:  Mr. Fuhr, Mr. Sutor, Mrs. Sutor, Friends of LBS, Chabad, and JCC.  *See* Ex. 2, at 2 of 2.  But only three of those six owners—Friends of LBS, Chabad, and JCC—are alleged to be members of Plaintiff LLC.  *See id.*  And those three owners are alleged to own only 42.5% of the purported inheritance rights.  *See* Ex. 3.  The three owners who are *not* members of Plaintiff—Mr. Fuhr, Mr. Sutor, and Mrs. Sutor, all of whom are (not coincidentally, as discussed further below) foreign nationals—are alleged to own the majority of those rights.[12]

---

[12] Fuhr owns 57.5%, Friends of LBS owns 32.5%, Chabad owns 5%, and JCC owns 5%.  *See* Ex. 3, at 3-45.  *See,* Ex. 3 at ¶¶ 4-5, 16-17, 25-26, 38-39.  The Sutors are entitled to 25% of the

Adjudicating this action—which seeks the entirety of the "more than 3 billion" dollars in supposed Bäuml assets (*see* Compl. ¶ 200)—in the absence of Fuhr and the Sutors would deprive those alleged inheritors of the ability "to protect the[ir] interest[s]" and would leave DB AG "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations" by reason of the claimed interest.  Fed. R. Civ. P. 19(a)(1)(B)(i-ii); *see also Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, No. 10-61856-CIV, 2012 WL 1638377, at *2 (S.D. Fla. May 9, 2012) (dismissing complaint for failure to name all co-owners of a trademark).  Indeed, were DB AG to prevail in this action, Fuhr and the Sutors could argue they are not bound by any judgment and remain free to initiate new actions against DB AG.

**B.      The Joinder Of Mr. Fuhr, Mr. Sutor, and Mrs. Sutor Is Not Feasible Because They Are Foreign Nationals Whose Joinder Would Destroy Diversity**

DB AG submits that there is an obvious, and tactical, reason why Fuhr and the Sutors are not members of Plaintiff:  Fuhr is a resident of Germany, and the Sutors are residents of Spain.  Joining them would destroy diversity jurisdiction, as aliens would be present on both sides of the litigation.  Plaintiff is thus between the proverbial rock and hard place:  Plaintiff *must* join Fuhr and the Sutors to escape dismissal of the suit under Fed. R. Civ. P. 19, but doing so would require dismissal of this action for lack of jurisdiction under 28 U.S.C. § 1332.  *See, e.g.*, *Spear*, 2014 WL 272724, at *3 (necessary party could not be joined because joinder would destroy complete diversity).  Joinder of Fuhr and the Sutors is therefore not feasible.

**C.      Mr. Fuhr, Mr. Sutor, and Mrs. Sutor Are Indispensable Parties**

Because joinder of Fuhr and the Sutors is not feasible, the Court must determine if they are "indispensable" parties whose absence requires dismissal of the action.  Fed. R. Civ. P. 19(b).

---

"found assets and realized claims" of the Bäuml estate, except that if no such assets are found or claims realized by August 2, 2020, the inheritance rights revert to the Sutors.  *See id*. at 12.

{41284055;1}

21

This determination is based on four factors:  (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).

The first factor—prejudice to Fuhr and the Sutors—closely parallels the analysis of whether they are necessary parties under Rule 19(a).  As discussed above, Fuhr and the Sutors hold the majority of alleged rights to the Bäuml estate and the disposition of this case in their absence would prejudice their ability to fully realize their purported claims.  *See Rhein v. Kevelson,* No. 14-61830-CIV, 2014 WL 6694744, at *3 (S.D. Fla. Nov. 26, 2014) (dismissing case where estate would be prejudiced if action proceeded in its absence).

The second factor—the extent to which prejudice can be lessened or avoided—also weighs in favor of dismissal.  Plaintiff offers no way in which the prejudice of litigating in the absence of necessary parties could be avoided.  Concerns about incomplete relief or inconsistent obligations would not be present in a single lawsuit that included Plaintiff, Fuhr, and the Sutors as parties.  *Spear*, 2014 WL 272724, at *4; *see also Cas. Indem. Exch. v. High Croft Enterprises, Inc.*, 714 F. Supp. 1190, 1192 (S.D. 1989) (second factor not satisfied where court could not structure judgment to avoid potential inconsistent rulings).

The third factor—whether a judgment rendered in the absence of Fuhr and the Sutors would be adequate—favors a finding of indispensability because any such judgment would not bring complete relief to all those holding interests in the Bäuml estate.  A single lawsuit would avoid what could otherwise be potentially piecemeal and inefficient litigation.  *Spear*, 2014 WL

272724, at *5; *Cas. Indem. Exch.*, 714 F. Supp. at 1192 (judgment inadequate where court could not grant complete relief without joinder of party).

The final factor is whether Plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  Plaintiff fails to demonstrate that it would be unable to obtain relief on its claims in a proceeding to which all interested parties are joined.  *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 849–50 (11th Cir. 1999) (where United Kingdom's Secretary of State for Transportation and American administrative agencies were authorized to address plaintiff's complaint, plaintiff had adequate remedy); *see also Cas. Indem. Exch.*, 714 F. Supp. at 1192 (fourth factor of Rule 19(b) analysis favored joinder where plaintiff could still pursue his rights in another forum).

Mr. Fuhr, Mr. Sutor, and Mrs. Sutor are thus necessary and indispensable parties to this action.  Plaintiff's failure to join them requires that the action be dismissed.

## V.    THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.    Diversity Jurisdiction Is Lacking

To invoke diversity jurisdiction, a plaintiff must plead complete diversity.  *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("every plaintiff must be diverse from every defendant.").  "Like the complete diversity rule in cases between citizens of different states, alienage jurisdiction prohibits an alien from suing another alien in federal court unless the suit includes United States citizens as plaintiffs and defendants."  *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011).

For purposes of determining diversity jurisdiction, an LLC like Plaintiff is deemed to possess the citizenship of its members.  *See Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300, 1303–04 (S.D. 2016).   Here, Plaintiff is a citizen of New York, South

Carolina, and Florida.  *See* Ex. 2, at 2 of 2.[13]  But as discussed, Fuhr and the Sutors, who are not members of Plaintiff, are both necessary and indispensable parties and are citizens of Europe. Their joinder here would violate the strictures of alienage jurisdiction and destroy complete diversity.  *See Rhein*, 2014 WL 6694744, at *2 n.4 (dismissing case where required joinder of absent party would destroy complete diversity).  Plaintiff's omission from this action of Fuhr and the Sutors (and while using Fuhr's outside counsel to boot) is a transparent attempt to manufacture diversity jurisdiction.  But "parties may not manufacture diversity jurisdiction by failing to join a non-diverse indispensable party."  *Bankston v. Burch*, 27 F.3d 164, 168 (5th Cir. 1994) (complete diversity lacking where plaintiff purposely failed to join non-diverse indispensable party); *Hood v. James*, 256 F.2d 895, 903 (5th Cir. 1958) (diversity jurisdiction lacking where indispensable shareholders purposefully omitted from suit to attempt to create diversity jurisdiction); *Warfield v. Marks*, 190 F.2d 178, 179-80 (5th Cir. 1951) (affirming denial of leave to amend where proposed amendment was to drop indispensable party who was not diverse).

The Court should not reward these tactics, and should find diversity lacking.

**B.    Federal Question Jurisdiction Under The Edge Act Or FATCA Is Lacking**

Plaintiff's assertion of jurisdiction under either the Edge Act or the Foreign Account Tax Compliance Act ("FATCA") (*see* Compl. ¶¶ 21, 23) fails as a matter of law.

The Edge Act applies to cases involving "Edge Act corporations," which are corporations chartered under Section 25A of the Federal Reserve Act.  12 U.S.C. § 632; *see also Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F. 3d 775, 780 (2d Cir. 2013) (to invoke § 632, "[a]

---

[13] Plaintiff lists American Friends of JCC Inc. as its New York-based member.  DB AG has found no record of this entity in any public source.

'corporation organized under the laws of the United States' (*i.e.*, an Edge Act corporation) must be a party to the suit.").  DB AG is not an Edge Act corporation.  Dewan Decl. ¶ 19.

As for FATCA, that statute does not permit Plaintiff to obtain information from DB AG related to the foreign accounts in which Plaintiff has an alleged interest, much less give the federal courts jurisdiction to compel the production of such information.  *See* Public Law 111-147 (111th Congress), Title V, Subtitle A, Sec. 501 et seq.

## VI.   PLAINTIFF'S CLAIMS ARE TIME-BARRED

The Complaint alleges that beginning in 1990, Mr. and Mrs. Sutor had knowledge of their alleged rights and attempted to locate and trace the assets of the Wertheim family.  *See* Compl. ¶ 124.  Because the alleged wrongful conduct is nearly a quarter of a century old, and no potentially applicable statute of limitations is longer than 10 years, the Complaint is time-barred.

### A.   The Statutes of Limitations Of Either Switzerland Or Florida Govern

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A*., 704 F.3d 927, 932 (11th Cir. 2013) (citation omitted).  The Court, however, need not determine at this stage whether there is a conflict between the laws of Switzerland and Florida because Plaintiff's claims are time-barred under the laws of both jurisdictions.

### B.   Swiss Statutes Of Limitations Have Expired

As explained in the accompanying Nobel Declaration: (1) only the heirs of an account holder have the right to obtain contractual information from a bank, and in any event, banks are obligated by Swiss law to preserve documents for no longer than 10 years; (2) restitution of bank assets is subject to a 10 year statute of limitations; and (3) unjust enrichment and tort claims are subject to a statute of limitations of one year from the date the person had knowledge of the

claim, or at most, 10 years from the date of the injury.  Nobel Decl. ¶¶ 20-22.  These statutes of limitations bar Plaintiff's claims, which began to run in the 1990s when the Wertheim heirs allegedly became aware of the missing assets.  *See* Compl. ¶¶ 124, 126, 128-133.

### C.    Florida Statutes Of Limitations Have Expired

The result is the same under Florida's statutes of limitations.  As shown below, no applicable Florida statute of limitations is longer than 4 years.

| Cause of Action[14] | Statute of Limitations | Source |
|---|---|---|
| Conversion | 4 years | § 95.11, F.S. |
| Fraudulent Transfer | 4 years | § 95.11, F.S. |
| Spoliation of Evidence | 4 years | § 95.11, F.S. |
| Breach of Fiduciary Duty | 4 years | § 95.11, F.S. |
| Unjust Enrichment | 4 years | § 95.11, F.S.[15] |

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DB AG

Even if this action suffered from *none* of the foregoing deficiencies, the Complaint would still require dismissal for failure to state a claim against DB AG under Rules 12(b)(6) and 9(b).  Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake."  To sufficiently plead a claim for fraud, a plaintiff must specify in the complaint:

> (1) Precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which

---

[14] DB AG, solely for purposes of this analysis, interprets Plaintiff's purported causes of action (*see* Compl. ¶¶ 194-248) as cognizable legal claims based upon its good faith understanding of the allegations contained therein, some of which are unclear.  Multiple purported causes of action in the Complaint are not styled as actual legal claims.

[15] Plaintiff alleges "Accounting" as a standalone cause of action.  *See* Compl. ¶¶ 201-206.  But an accounting is not available "absent some independent cause of action."  *Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988); *see also Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007) ("an accounting is a remedy attached to a separate independent cause of action.").

{41284055;1}

they misled the plaintiff; and (4) what the defendant obtained as a
consequence of the fraud.

*FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011), *cert denied*,

133 S. Ct. 109 (2012).  Rule 9(b) applies not only to express claims of fraud, but also where the

conduct alleged "sounds in fraud."

In addition, under Rule 12(b)(6) a plaintiff must plead enough facts to state a claim that is

plausible on its face, meaning a complaint must contain factual content that allows a court to

draw a reasonable inference that the defendant is liable for the misconduct alleged.  *See Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Determining whether a claim for relief is plausible is a

context-specific task that requires the court to draw on its judicial experience and common sense.

*Id.* at 1950.

### A.    Plaintiff Fails to Plead Its Claims, Which Sound in Fraud, With Particularity

Plaintiff's claims clearly sound in fraud:  the Complaint is chock full of allegations

claiming that Deutsche Bank entities have engaged in a "scheme to withhold the Wertheim

Family Fortune from its rightful heirs" (*see* Compl. ¶ 1(d-e)), "concealed" account information

from Mr. and Mrs. Sutor and other alleged heirs (*id*. ¶ 1(d)), and have spoliated evidence.  *Id.* ¶

210.  But the Complaint fails to allege the required "who, what, when and where" of these claims

as they relate to DB AG.  Indeed, the Complaint for the most part fails to even attempt to apprise

DB AG of what *it* purportedly did wrong, and instead often resorts to allegations directed at an

amorphous group of so-called "Defendant Banks."  *See, e.g*., *id*. ¶ 18 ("The Defendant Banks

have engaged in improper conduct…").  Blanket references to all "defendants" that fail to

delineate the purportedly wrongful conduct of each render the Complaint subject to dismissal.

*See Ashcroft*, 129 S. Ct. at 1949; *see also Brooks v. Blue Cross and Blue Shield of Florida, Inc*.,

116 F.3d 1364, 1380-81 (11th Cir. 1997) ("[I]n a case involving multiple defendants… the complaint should inform each defendant of the nature of his alleged participation in the fraud").

And in the relatively few instances where the Complaint does attribute wrongdoing to specific Deutsche Bank entities, the named entity typically is DB Suisse and, to a lesser extent, DB Spain.  Those entities are legally separate from DB AG, are located in Switzerland and Spain, have no U.S. presence, and have never been validly served with the Complaint.

Plaintiff's vague allegations fail to satisfy Rule 9(b).

**B.     Plaintiff's Claims Are Implausible On Their Face**

Plaintiff's claims also fail to rise to the level of "plausible," remaining hopelessly stuck in the realm of the barely "conceivable."  *See Ashcroft*, 129 S. Ct. at 1949.  The Complaint attempts to allege a conspiracy of historic proportions—one that involves two major banking institutions in Europe, multiple individuals, and multiple decades.   Plaintiff alleges the existence of a European family fortune, now calculated at $3 billion, that was looted with the supposed assistance of Deutsche Bank entities.  *See* Compl. ¶ 85.  Yet Plaintiff is wholly unable to allege the existence of a *single* actual bank account that even mentions the name Wertheim or Bäuml. *See id.* ¶¶ 60, 72, 93, 108, 144, 147, 166, 176, 196, 198-199.  Instead, Plaintiff claims that all of the bank accounts containing the vast fortune of a prominent family were supposedly "secret" and "pseudonym" accounts.  *See id.* ¶¶ 59, 74, 94, 143.

Relatedly, Plaintiff alleges that "[t]he complaint is based primarily upon a limited number of documents," (*see id.* ¶ 2) but those documents do not provide a basis for Plaintiff's allegations.  For example, Plaintiff cites Exhibit 10 as the basis for its allegation that, "in 1961," Bäuml "made diary entries with calculations of the principal and annual return on Family investment accounts," that totaled "144,582,183.00 (in US Dollars)."  *See* Compl. ¶¶ 83-84.  DB AG encourages the Court to examine Exhibit 10:  that document is a jumble of handwritten

numbers and words.  It does not mention bank names, or account numbers.  It does not mention the names Bäuml or Wertheim.  *And it does not even contain a single dollar sign.*

Similarly, Plaintiff's Exhibit 18 is Bäuml's purported last will.  If the Court examines Exhibit 18, it will see that the will does not mention any bank accounts, the name Wertheim, or anything else that would provide a basis for Plaintiff's allegations that Bäuml owned a vast fortune at the time of his death.  *See* Ex. 18.

And Plaintiff's key document as it relates to any Deutsche Bank entity is Exhibit 8, which Plaintiff alleges shows the alleged 1993 transfer of Bäuml's assets to a DB Suisse account in Geneva, ending in 012 INT.  *See* Ex. 8, at 2-4 (certified translation of Plaintiff Ex. 8).  But when Exhibit 8 is examined, it makes *no mention* of Bäuml, the Wertheim Family, any of the pseudonyms they allegedly used, any of the companies they allegedly owned, or even any amount of money that was supposedly transferred to DB Suisse.  *See* Ex. 8.

The Court is not required to completely suspend common sense at the motion to dismiss stage.  When boiled down, the Complaint is little more than a collection of incredible, "conclusory allegations . . . masquerading as facts," which do not serve to insulate the Complaint from dismissal.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level."); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("...when the exhibits [to the complaint] contradict the general and conclusory allegations of the pleading, the exhibits govern.").  In sum, Plaintiff's allegations are not plausible.

## CONCLUSION

DB AG respectfully requests that the Complaint be dismissed with prejudice.


Dated:  March 27, 2017


By: */s/* Michael I. Goldberg _____
Michael I. Goldberg, Esq.
Florida Bar Number:  886602
Email:  michael.goldberg@akerman.com
Secondary: charlene.cerda@akerman.com
AKERMAN LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Phone:  (954) 463-2700/ Fax:  (954) 463-2224


Robert J. Liubicic, Esq. *[Admitted Pro Hac Vice]*
Samir L. Vora, Esq. *[Admitted Pro Hac Vice]*
Email:  rliubicic@milbank.com
Email:  svora@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA  90067
Phone:  (424) 386-4000 / Fax:  (213) 629-5063

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this

March 27, 2017 via the Court's notice of electronic filing on all CM/ECF registered users entitled

to notice in this case as indicated on the attached Service List.


By: <u>*/s/* Michael I. Goldberg</u>
       Michael I. Goldberg, Esq.

## SERVICE LIST

**Wertheim Jewish Education Trust, LLC v. Deutsche Bank AG, et al.**
**CASE NO. 17-cv-60120-KMM**
**United States District Court, Southern District of Florida**

| | |
|---|---|
| Yechezkel Rodal<br>**RODAL LAW, P.A**.<br>3201 Griffin Road<br>Suite 203<br>Dania Beach, Florida 33312<br>Tel: (786) 763-2551<br>Fax: (954) 272-7587<br>chezky@rodallaw.com<br><br>*Counsel for Plaintiff*<br><br>Kenneth Foard McCallion *[Admitted Pro Hac Vice]*<br>MCCALLION & ASSOCIATES, LLP<br>100 Park Avenue, 16th Floor<br>New York, NY  10017<br>Tel: (646) 366-0884<br>Fax: (646) 366-1384<br>kfm@mccallionlaw.com<br><br>*Co-Counsel for Plaintiff* | **Michael I. Goldberg**<br>**AKERMAN LLP**<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, Florida 33301-2229<br>Telephone: (954) 463-2700<br>Facsimile: (954) 463-2224<br>michael.goldberg@akerman.com<br>charlene.cerda@akerman.com<br><br>*Counsel for Defendant Deutsche Bank AG*<br><br>**Robert J. Liubicic** *[Admitted Pro Hac Vice]*<br>**Samir L. Vora** *[Admitted Pro Hac Vice]*<br>**MILBANK, TWEED, HADLEY & McCLOY LLP**<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA  90067<br>Tel: (424) 386-4000<br>Fax: (213) 629-5063<br>rliubicic@milbank.com<br>svora@milbank.com<br><br>*Co-Counsel for Defendant Deutsche Bank AG* |