# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No.: 17-cv-60120-KMM

WERTHEIM JEWISH EDUCATION TRUST, LLC,

     Plaintiff,

v.

DB AG; DEUTSCHE BANK (SUISSE) SA; DEUTSCHE
BANK SOCIEDAD ANÓNIMA ESPAÑOLA; and
DEUTSCHE BANK PRIVATE WEALTH
MANAGEMENT,

     Defendants.

_____ /

WERTHEIM JEWISH EDUCATION TRUST, LLC,

     Plaintiff,

v.

CREDIT SUISSE AG and CREDIT SUISSE TRUST AG,

     Defendants.

_____ /

## CREDIT SUISSE'S MOTION TO DISMISS THE COMPLAINT
## WITH SUPPORTING MEMORANDUM OF LAW

CARLTON FIELDS JORDEN BURT, P.A.
100 Southeast Second Street, Ste. 4200
Miami, Florida  33131
Tel: (305) 530-0050
Fax: (305) 530-0055

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Defendants Credit Suisse AG
and Credit Suisse Trust AG*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................. 3

    A.    The Parties. .............................................................................. 3

    B.    The Complaint's Allegations. ..................................................... 5

    C.    The Luis Marimón-Fuhr German Litigation and Fuhr's Section 1782 Petition. ................................................................................. 7

ARGUMENT .................................................................................................... 8

I.    NEITHER CSAG NOR CSTAG IS SUBJECT TO PERSONAL JURISDICTION IN FLORIDA. ............................................................................................ 8

    A.    Neither CSAG nor CSTAG is Subject to General Jurisdiction in Florida. ........... 9

    B.    Neither CSAG nor CSTAG is Subject to Specific Jurisdiction in Florida. ......... 10

II.    THIS ACTION SHOULD BE DISMISSED UNDER THE *FORUM NON CONVENIENS* DOCTRINE. ............................................................................ 12

    A.    Switzerland is an Adequate Alternative Forum. ................................. 12

    B.    The Public- and Private-Interest Factors Heavily Favor Switzerland. ............... 13

    C.    Plaintiff Can Bring This Action in Switzerland Without Inconvenience or Prejudice. ........................................................................... 16

III.    VENUE IS IMPROPER IN THE SOUTHERN DISTRICT OF FLORIDA. ................. 17

IV.    PLAINTIFF HAS FAILED TO JOIN INDISPENSABLE PARTIES. .......................... 17

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
578 F.3d 1283 (11th Cir. 2009) ........................................................................ 13, 15

*Alsheikh v. Lew*,
2016 WL 4426960 (N.D. Cal. Aug. 22, 2016) ............................................................ 19

*Atmos Nation LLC v. Alibaba Group Holding Ltd.*,
2016 WL 1028332 (S.D. Fla. Mar. 15, 2016) ............................................................. 11

*Bell v. United Air Lines, Inc.*,
2011 WL 11048116 (S.D. Fla. Nov. 30, 2011) ........................................................... 17

*Bracewell v. Nicholson Air Servs., Inc.*,
748 F.2d 1499 (11th Cir. 1984) ................................................................................... 3

*Bryant v. Rich*,
530 F.3d 1368 (11th Cir. 2008) ................................................................................... 3

*BTG Patent Holdings, LLC v. Bag2Go, GmbH*,
2016 WL 4249948 (S.D. Fla. Jun. 9, 2016) ............................................................... 11

*Carmouche v. Tamborlee Mgmt., Inc.*,
789 F.3d 1201 (11th Cir. 2015) ................................................................................... 9

*Cleveland v. Kerzner Int'l Resorts, Inc.*,
2015 WL 5695276 (S.D. Fla. Sept. 29, 2015) ........................................................... 16

*Crawford v. United States Dep't of Treasury*,
2016 WL 1642968 (S.D. Ohio Apr. 26, 2016) ........................................................... 19

*Daimler AG v. Bauman*,
571 U.S. __, 134 S. Ct. 746 (2014) ....................................................................... 9, 10

*Dickson Marine, Inc. v. Panalpina*,
179 F.3d 331 (5th Cir.1999) ....................................................................................... 13

*Do Rosario Veiga v. World Meteorological Organisation*,
486 F. Supp. 2d 297 (S.D.N.Y. 2007) ........................................................................ 13

*Ford v. Brown*,
319 F.3d 1302 (11th Cir. 2003) ................................................................................. 13

*Fraser v. Smith*,
594 F.3d 842 (11th Cir. 2010) ............................................................................. 10, 11

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Fuhr v. Credit Suisse AG, et anno.*,
   No. 1:13-mc-21598-WJZ (S.D. Fla.) ............................................................ 7

*Fuhr v. Credit Suisse AG, et anno.*,
   No. 15-15355 (11th Cir.) .......................................................................... 8

*GDC Acquisitions, LLC v. Government of Belize*,
   749 F.3d 1024 (11th Cir. 2014) ............................................................... 12

*Gilstrap v. Radianz Ltd.*,
   443 F. Supp. 2d 474 (S.D.N.Y. 2006) ...................................................... 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)............................................................................... 9, 10

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .................................................................................. 16

*Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*,
   669 F. Supp. 2d 1353 (S.D. Fla. 2009) .................................................... 17

*Hill v. Marston*,
   13 F.3d 1548 (11th Cir. 1994) ................................................................. 11

*Iragorri v. United Tech. Corp.*,
   274 F.3d 65 (2d Cir. 2001) ...................................................................... 15

*Iraola & CIA, S.A. v. Kimberly-Clark Corp.*,
   232 F.3d 854 (11th Cir. 2000) ................................................................. 18

*King v. Cessna Aircraft Co.*,
   562 F.3d 1374 (11th Cir. 2009) ............................................................... 12

*Laker Airways, Inc. v. British Airways, PLC*,
   182 F.3d 843 (11th Cir. 1999) ................................................................. 19

*LaSala v. UBS, AG*,
   510 F. Supp. 2d 213 (S.D.N.Y. 2007) ...................................................... 16

*Leon v. Million Air, Inc.*,
   251 F.3d 1305 (11th Cir. 2001) ......................................................... 12, 15

*Licciardello v. Lovelady*,
   544 F.3d 1280 (11th Cir. 2008) ............................................................... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Liquidation Comm'n of Banco Int'l, S.A. v. Alvarez Renta,*
  530 F.3d 1339 (11th Cir. 2008) ........................................................................ 12

*Louis Vuitton Malletier, S.a. v. Mosseri,*
  736 F.3d 1339 (11th Cir. 2013) .......................................................................... 9

*Medicor AG v. Arterial Vascular Eng'g,*
  141 F.3d 1177 (9th Cir. 1998) .......................................................................... 13

*Molinos Valle del Cibao, C. por A. v. Lama,*
  633 F.3d 1330 (11th Cir. 2011) ................................................................... 18, 19

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 253 (1981) ............................................................................. 13, 15, 16

*R.W. Sawant & Co. v. Ben Kozloff, Inc.,*
  507 F. Supp. 614 (N.D. Ill. 1981) .................................................................... 19

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.,*
  374 F.3d 1022 (11th Cir. 2004) ........................................................................ 18

*Satz v. McDonnell Douglas Corp.,*
  244 F.3d 1279 (11th Cir. 2001) ........................................................................ 13

*Tarasewicz v. Royal Caribbean Cruises Ltd.,*
  2015 WL 3970546 (S.D. Fla. Jun. 30, 2015) ............................................... 13, 15

*Tazoe v. Airbus S.A.S.,*
  631 F.3d 1321 (11th Cir. 2011) ........................................................ 12, 13, 15, 16

*Thermoset Corp. v. Bldg. Materials Corp. of Am.,*
  2017 WL 816224 (11th Cir. Mar. 2, 2017) ............................................. 18, 19, 20

*Thomas v. New Castle County Police Dep't,*
  2016 WL 791294 (D. Del. Feb. 29, 2016) ........................................................ 18

*Thompson v. Carnival Corp.,*
  174 F. Supp. 3d 1327 (S.D. Fla. 2016) ................................................. 8, 9, 10, 11

*United Techs. Corp. v. Mazer,*
  556 F.3d 1260 (11th Cir. 2009) .......................................................................... 9

*Webster v. Royal Caribbean Cruises, Ltd.,*
  124 F. Supp. 2d 1317 (S.D. Fla. 2000) .............................................................. 3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Windt v. Qwest Comm. Int'l, Inc.,*
    529 F.3d 183 (3d Cir. 2008) ..................................................................... 15

*Yavuz v. 61 MM, Ltd.,*
    576 F.3d 1166 (10th Cir. 2009) ................................................................ 13

**STATUTES**

12 U.S.C. § 632 ........................................................................................... 19

28 U.S.C. § 1391 ......................................................................................... 17

28 U.S.C. § 1406 ......................................................................................... 17

28 U.S.C. § 1782 ........................................................................................... 7

Fla. Stat. § 48.193 ................................................................................... 8, 10

**OTHER AUTHORITIES**

Rule 19 Advisory Committee Note ................................................... 18, 19, 20

**RULES**

Fed. R. Civ. P. 12 ....................................................................................... 17

Fed. R. Civ. P. 17 ....................................................................................... 17

Fed. R. Civ. P. 19 ................................................................................... 17, 18

Fed. R. Civ. P. 4 ......................................................................................... 11

## PRELIMINARY STATEMENT[1]

Plaintiff's 53-page, 228-paragraph Complaint tells a convoluted tale of events long ago and far away. The story concerns Credit Suisse's alleged handling and ultimate transfer of certain assets that Karl Wertheim, a long-deceased German national then living in Spain, allegedly deposited beginning in the 1930s into Credit Suisse accounts in Switzerland. Plaintiff, a Florida LLC formed in December 2016, claims an interest in those foreign assets based on a series of alleged bequests and transactions involving Wertheim, his wife, his illegitimate son, the son's friends (the Sutors), and someone who bought the friends' interest (Tim Fuhr). Conspicuously absent from Plaintiff's lengthy story is any involvement by a non-European or any conduct in the United States, much less in Florida. The Complaint should be dismissed on the following four independent bases.

*First*, neither defendant is subject to personal jurisdiction in Florida. There is no general jurisdiction because CSAG and CSTAG are Swiss corporations with principal places of business in Switzerland, and neither has sufficient contacts with Florida to render them "at home" here. Nor is there specific jurisdiction because Plaintiff does not allege conduct covered by Florida's long-arm statute; and, even if it had, defendants' extremely limited contact with Florida would not permit the exercise of personal jurisdiction consistent with due process. Additionally, Plaintiff cannot allege federal long-arm jurisdiction because none of its claims arises under federal law.

---

[1] This brief defines (i) Plaintiff Wertheim Jewish Education Trust, LLC, as "Plaintiff," (ii) Defendant Credit Suisse AG as "CSAG," (iii) Defendant Credit Suisse Trust AG as "CSTAG," (iv) CSAG and CSTAG together as "Credit Suisse," (v) the Declaration of Jennifer Huffman as "Huffman Dec.," and (vi) the Declaration of Flavio Romerio as "Romerio Dec." Unless otherwise noted, all emphasis in quotations is added, and all internal citations and quotation marks are omitted.

*Second*, the *forum non conveniens* doctrine likewise requires dismissal. Switzerland is an adequate alternative forum because Swiss law offers causes of action and remedies that could provide relief similar to that sought here, and Credit Suisse is subject to jurisdiction there. The private-interest factors heavily favor dismissal, particularly because of the superior access to evidence in Switzerland. Almost all the relevant documents and witnesses are in Switzerland, and the remainder appear to be in nearby European countries. Conversely, no relevant documents or witnesses are in the United States, and attempts to obtain discovery from Switzerland for use here would be hampered by significant legal and practical obstacles. Nor is Plaintiff's choice of forum entitled to deference here because (i) the calculated formation of Plaintiff as a Florida LLC less than a month before it commenced this action strongly suggests forum-shopping, (ii) Plaintiff is acting in a representative capacity, and (iii) Plaintiff claims to represent foreign heirs, one of which (Fuhr) has already been litigating in Europe (Germany) key facts underlying the claims here. The public-interest factors also strongly favor dismissal because this busy Court and Florida residents should not be burdened adjudicating a dispute involving Swiss banks, Swiss bank accounts, and alleged foreign beneficiaries, while Switzerland's interest in these issues is paramount.

*Third*, this action should also be dismissed for improper venue. The claims do not arise from events that occurred in this district, and CSAG and CSTAG are neither Florida residents nor subject to personal jurisdiction in Florida.

*Fourth*, this action should also be dismissed for failure to join indispensable parties. The Sutors and Fuhr are required parties because Plaintiff alleges that they have an interest in the assets at issue and, thus, litigating without them could subject Credit Suisse to multiple or inconsistent obligations (as Fuhr's pursuit of litigation in Germany illustrates). But joining the

Sutors and Fuhr as plaintiffs would destroy diversity jurisdiction, and Plaintiff cannot otherwise establish federal jurisdiction with their makeweight Edge Act and Foreign Account Tax Compliance Act ("FATCA") allegations.  The Court, therefore, should dismiss this action because it cannot, "in equity and good conscience," proceed without the Sutors and Fuhr: no judgment without their participation could be tailored to avoid prejudice to Credit Suisse or the Sutors and Fuhr, and Plaintiff can re-file this action in another jurisdiction where joinder would be possible.

## BACKGROUND[2]

A.     **The Parties.**

Plaintiff claims to be a Florida not-for-profit corporation.  (Compl. ¶ 8.)  It is actually a Florida limited liability company, formed on December 21, 2016—less than a month before commencing this action.[3]  Plaintiff allegedly "has the authority of, and is acting on behalf of, *all* lawful heirs to the Wertheim/Bäuml assets."  (Compl. ¶ 8.)  Based on the Complaint's exhibits, those alleged heirs include the Sutors, a German couple alleged to be the legal heirs to the Wertheim/Bäuml assets, and Tim Fuhr, a German national who acquired an interest in the

---

[2]  The facts in this section are derived from the Complaint's allegations (which are assumed to be true solely for this motion's purposes), the Complaint's exhibits, public and judicial records, the Huffman Dec., and the Romerio Dec.  The Court is permitted to consider materials outside the pleadings on a motion to dismiss for lack of personal jurisdiction or *forum non conveniens*.  *See Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1501 n.1 (11th Cir. 1984) (personal jurisdiction); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (*forum non conveniens*); *see also Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) ("[A] judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process.").

[3]  A copy of Plaintiff's "Detail by Entity Name" page from the Florida Division of Corporations' SunBiz.org website is annexed as Exhibit A.  Complaint Ex. 2 refers to "Wertheim Jewish Charitable Trust LLC," not Wertheim Jewish Education Trust, LLC.  We assume, for this motion's purposes, that this is a typo; the SunBiz.org website has no record of an entity known as "Wertheim Jewish Charitable Trust LLC."

Wertheim/Bäuml assets from the Sutors in 2012.  (*Id.*, Ex. 2, 3.)[4]  Plaintiff refers to itself as an "heir" to the Wertheim/Bäuml assets (Compl. ¶¶ 5, 191, 199), but neither explains how it acquired its interest nor provides evidence of an assignment.

CSAG and CSTAG are Swiss corporations with their principal places of business in Switzerland.  (Huffman Dec. ¶ 3; Compl. ¶ 10.)  Their de minimis Florida contacts are as follows:

**CSAG.**  It is authorized to do business in Florida and has a designated agent for service of process.  (Huffman Dec. ¶¶ 4, 7.)  That's it.  CSAG does not have a physical office in Florida and has not had one since 2012, when its representative office in Miami closed.  (*Id.* ¶¶ 5, 7.)  Nor does CSAG have any employees in Florida.  (*Id.* ¶ 7.)

Contrary to Plaintiff's unsupported assertions (Compl. ¶ 10), CSAG does not have "telephone, fax and internet services" in Florida.  (Huffman Dec. ¶ 7.)  Likewise misleading and inadequate is Plaintiff's generalized allegation that CSAG "advertises and solicits" in Florida "for its international banking business," and has an "interactive websites through which it conducts business" in Florida.  (Compl. ¶ 10.)  While anyone anywhere with a computer and an internet connection can access the "Credit Suisse"-branded website or find advertisements for the "Credit Suisse" brand on the web or in certain national publications, CSAG does no targeted advertising in Florida specifically.  (Huffman Dec. ¶ 7.)

**CSTAG.**  It has *no* Florida contacts.  CSTAG is not registered to do business in Florida, and does not have any physical offices or employees working in Florida.  (Huffman Dec. ¶ 8.)  Plaintiff's conclusory allegation that CSTAG conducts business in the United States (Compl. ¶ 11) is untrue; CSTAG has no U.S. operations (Huffman Dec. ¶ 8).  Moreover, CSTAG was not

---

[4]  A certified translation of the documents in Complaint. Ex. 3 is annexed as Exhibit B.

even formed until November 29, 1996 (Romerio Dec. ¶ 12), more than six years after Dr. Bäuml's death and more than three years after Credit Suisse's alleged wrongful transfer of funds (*see infra* at 6-7).

**B.      The Complaint's Allegations.**

Joseph Wertheim was a German-Jewish industrialist who established the Wertheim Sewing Machine Company in Frankfurt, Germany, in 1862.  (Compl. ¶¶ 1, 29, 39.)  When he died in 1899, his "corporate empire" was worth "hundreds of millions of dollars."  (*Id.* ¶ 42.)  He left all his business assets to Karl Wertheim, one of his ten children.  (*Id.* ¶¶ 37, 41.)

In the 1920s, Karl Wertheim relocated his family and major business interests from Germany to Spain, and relocated their financial assets to Switzerland.  (*Id.* ¶¶ 44, 46.)  Beginning in 1931, Wertheim opened accounts at Credit Suisse in Switzerland, which would become the primary custodian of the Wertheim accounts and assets.  (*Id.* ¶¶ 48, 53.)  The assets at Credit Suisse were held in either numbered accounts, Wertheim pseudonym accounts, or trust accounts that identified the beneficial owners as Wertheim family members or their pseudonyms.  (*Id.* ¶¶ 54-56.)  From the 1930s through 1976, the names of the accounts' beneficial owners were (i) Karl Wertheim a/k/a Carlos Vallin Ballin, (ii) Maria Wertheim a/k/a Maria Vallin Ballin, (iii) Hispano Olivetti SA, (iv) Hispano Olivetti Office SA, (v) Interwinko AG, and (vi) Intertrade Development & Finance Ltd.  (*Id.* ¶¶ 57, 71, 91.)

Karl Wertheim died in 1945, and his entire estate passed to his wife, Maria.  (*Id.* ¶ 62.)  Maria died in 1976 and allegedly left all her assets to Dr. Ambrosius Wolfgang Bäuml, who was not her son, but rather the son of Karl and her sister.  (*Id.* ¶¶ 59-61, 85-86.)  But while the Complaint refers to Dr. Bäuml as Maria's "adopted" son (*id.* ¶ 77 (quotation marks in original)), there is no allegation that Maria ever legally adopted Dr. Bäuml, and none of the Complaint's 27 exhibits supports the allegation that Dr. Bäuml was Maria's lawful heir.

From 1945 until 1980, Don Federico Marimón Griffel ("Griffel")—Karl and Maria's personal counsel—was listed as the "Trustee/Nominee" on the Credit Suisse accounts. (*Id.* ¶¶ 72, 92.) After Griffel died in 1980, his sons—Frederico and Luis Marimón Garnier ("Luis Marimón")—were listed on the accounts. (*Id.* ¶ 93.) The two Marimóns also held joint powers of attorney for the Wertheim estate (*id.*), but Luis Marimón became the sole power of attorney on September 26, 1983 (*id.* ¶ 98). Luis Marimón met on that date in Geneva, Switzerland, with Credit Suisse officers, as well as on November 4, 1986, and November 16, 1989, to confirm that he had a power of attorney over the accounts. (*Id.* ¶¶ 99, 102, 103.)

Dr. Bäuml died on August 2, 1990, and his will named as his sole heirs Rudolf Sutor and Giselheide Eichammer-Sutor, a German couple that Dr. Bäuml had befriended while living in Barcelona, Spain. (*Id.* ¶¶ 106-13, 115.) Before he died, Dr. Bäuml had given Mrs. Sutor a power of attorney. (*Id.* ¶ 114.) The Sutors informed Credit Suisse in 1990 of Dr. Bäuml's death and requested that Credit Suisse freeze any accounts holding his assets Dr. Bäuml. (*Id.* ¶¶ 119-20.) On November 2, 1990, however, Luis Marimón met with Credit Suisse in Geneva, and "re-verified" his authority over the accounts. (*Id.* ¶ 122.)

On June 17, 1992, the Sutors and their lawyer met with Credit Suisse in Zurich, Switzerland, presented evidence that they were Dr. Bäuml's sole heirs, and requested information concerning accounts as to which Dr. Bäuml or the Wertheims were beneficial owners. (*Id.* ¶¶ 127-29.) Credit Suisse denied that it had any relationship with or accounts belonging to Dr. Bäuml or the Wertheims. (*Id.* ¶ 132.) On December 7, 1992, Luis Marimón gave Credit Suisse instructions to transfer funds allegedly from the accounts to an account at Deutsche Bank (Suisse) SA ("DB"); the transfer was completed in January 1993. (*Id.* ¶¶ 147, 149.)

On May 11, 2006, the Sutors obtained from Credit Suisse in Switzerland documents that allegedly provided evidence of (i) the existence of the Wertheims' and Dr. Bäuml's Credit Suisse accounts, (ii) meetings with Luis Marimón in the 1980s, during which he asserted or confirmed his power of attorney over the accounts, and (iii) the 1993 transfer of funds to a DB account.  (*Id.* ¶¶ 169-71.)[5]  And during a September 7, 2006, meeting with the Sutors in Zurich (*id.* ¶ 173), Credit Suisse officials acknowledged a transfer to the DB account on Luis Marimón's instructions, but denied any wrongdoing and refused to provide the Sutors with additional documents or information concerning the accounts (*id.* ¶ 174).

On January 19, 2017—more than ten years after the 2006 meetings—Plaintiff filed the Complaint.

## C.     The Luis Marimón-Fuhr German Litigation and Fuhr's Section 1782 Petition.

In May 2013, Fuhr filed in this Court an application for judicial assistance, under 28 U.S.C. § 1782, seeking discovery from CSAG to defend himself against Luis Marimón's defamation claim in Germany.  *See Fuhr v. Credit Suisse AG, et anno.*, No. 1:13-mc-21598-WJZ (S.D. Fla.) ("*Fuhr*").  One of Fuhr's lawyers in that action, Kenneth McCallion, represents Plaintiff here.  (*Id.*)  Fuhr describes Luis Marimón's defamation claim as arising out of letters that Fuhr wrote to DB in Frankfurt, Germany, accusing Luis Marimón of transferring the Wertheim/Bäuml assets from the Credit Suisse accounts to a DB account (*Fuhr*, Doc. 1 at 2)— i.e., the same allegations upon which Plaintiff's claims here are based (Compl. ¶ 147).  The documents Fuhr seeks in the Section 1782 action overlap with the documents Plaintiff seeks through its Second, Third, Fourth, and Fifth Causes of Action.  (*Compare Fuhr*, Doc. 1 at 7-9,

---

[5]   As co-defendant Deutsche Bank AG notes in its March 27, 2017 motion to dismiss, these documents (and others that Plaintiff attaches as exhibits) do not support the Complaint's allegations that there were Wertheim/Bäuml accounts at Credit Suisse or that funds from any such alleged accounts were transferred to a DB account.  (*See* Doc. 23, at 28-29.)

*with* Compl. ¶¶ 197-228.)  The district court granted Fuhr's petition against CSAG (*see Fuhr* Doc. 91); that decision is on appeal to the Eleventh Circuit, which has stayed the district court order pending appeal (*See* January 15, 2016 Order, *Fuhr v. Credit Suisse AG, et anno.*, No. 15-15355 (11th Cir.)).

Moreover, as described more fully in Deutsche Bank AG's motion to dismiss, this is just the latest in a series of actions by individuals or entities that claim to represent or to have acquired rights from the Sutors (including Fuhr and notorious disbarred lawyer Edward Fagan) based on an allegedly wrongful transfer of Dr. Bäuml's assets.  (*See* Doc. 23, at 3-6.)

**ARGUMENT**

**I.     NEITHER CSAG NOR CSTAG IS SUBJECT
         TO PERSONAL JURISDICTION IN FLORIDA.**

This Court lacks personal jurisdiction over CSAG and CSTAG because each is a Swiss corporation with its principal place of business in Switzerland that has only negligible (if any) contact with Florida, and this dispute arises out of alleged conduct and statements that occurred entirely in Europe.  As this Court has held, a federal court sitting in Florida must determine whether (i) an out-of-state defendant is subject to personal jurisdiction under Florida's long-arm statute (Fla. Stat. § 48.193), which recognizes both general and specific personal jurisdiction, and (ii) exercising personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause.[6]  The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to

---

[6] *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1333 (S.D. Fla. 2016) (Moore, J.) (citing cases).

make out a prima facie case of jurisdiction."[7]  Here, Plaintiff has not even come close to pleading facts sufficient to establish general *or* specific personal jurisdiction.

### A.      Neither CSAG nor CSTAG is Subject to General Jurisdiction in Florida.

General or all-purpose jurisdiction empowers this Court to adjudicate "any claims against a defendant, whether or not they involve the defendant's activities in Florida."[8]  But as this Court has recognized, "[g]iven recent decisions by the Supreme Court and the Eleventh Circuit, the analysis of [the general personal jurisdiction] issue practically ends before it begins."[9]   In *Daimler AG v. Bauman*, the Supreme Court held that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there," and "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."[10] For defendants, like CSAG and CSTAG, that were neither incorporated nor maintain their principal places of business in the forum (Huffman Dec. ¶ 3), general jurisdiction will only arise in the "exceptional case" where their "operations" in the forum are "so substantial and of such a nature as to render the corporation at home in that State."[11]

There is no plausible argument that either CSAG or CSTAG is "at home" in Florida. CSAG has only the slightest contact with Florida—it is authorized to do business here and has a

---

[7]  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013), quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Thompson*, 174 F. Supp. 3d at 1333.

[8]  *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).

[9]  *Thompson,* 174 F. Supp. 3d at 1334.

[10]  571 U.S. ___, 134 S. Ct. 746, 760 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

[11]  *Daimler*, 134 S. Ct. at 761 n.19; *see also Carmouche*, 789 F.3d at 1205 ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").

designated agent for service of process—and CSTAG has none.   (Huffman Dec. ¶¶ 4, 7.)

Plaintiff's conclusory allegations of CSAG Florida offices, employees, etc. (Compl. ¶ 10), are

both wrong (Huffman Dec. ¶ 10) and inadequate.[12]   They pale in comparison to the forum

contacts in *Daimler*, where defendant was "the largest supplier of luxury vehicles to the

California market" and had "multiple California-based facilities."[13]  But the Supreme Court held

that those contacts were insufficient to establish general jurisdiction.[14]   The far weaker

allegations (and facts) here are necessarily inadequate, and, thus, general jurisdiction does not

apply.

### B.   Neither CSAG nor CSTAG is Subject to Specific Jurisdiction in Florida.

There is also no basis for specific personal jurisdiction, which applies only where "the

claim asserted against the defendant arises from the defendant's contacts with Florida, and those

contacts fall within one of the enumerated categories set forth in [Fla. Stat.]

section 48.193(1)(a)."[15]   Plaintiff cannot establish specific jurisdiction over either CSAG or

CSTAG because none of the alleged "facts relevant to plaintiff's causes of action" (Compl.

¶¶ 24-228) relates to defendants' de minimis Florida contacts, much less falls within any of

section 48.193(1)(a)'s nine categories.  This is not surprising, because all of the alleged conduct

took place in Switzerland, not Florida.  Moreover, even if the Complaint could somehow be read

to allege conduct covered by section 48.193(1)(a), exercising jurisdiction over CSAG or CSTAG

---

[12]   *See, e.g., Fraser v. Smith*, 594 F.3d 842, 846-47 (11th Cir. 2010) (holding foreign tour operator's aggregate Florida contacts, including Florida-accessible website and advertisements in national publications, not sufficient to establish general jurisdiction in Florida).

[13]   *Daimler*, 134 S. Ct. at 752.

[14]   *Id.* at 761-62.

[15]   *Thompson*, 174 F. Supp. 3d at 1333; *see also Goodyear*, 564 U.S. at 919 (specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.").

would violate the Due Process Clause because their Florida contacts are extremely limited (*see supra* at 9-10), and there is no alleged conduct "expressly aimed at Florida."[16]

Although Plaintiff has not pleaded federal long-arm jurisdiction under Fed. R. Civ. P. 4(k)(2), Plaintiff could not in any event satisfy one of federal long-arm jurisdiction's "essential conditions": claims arising under federal law.[17]   The First Cause of Action (Return of $3 billion), apparently a conversion claim, is not federal, while the Fifth Cause of Action (Pure Bill of Discovery) asserts a Florida-law claim.[18]   (Compl. ¶¶ 190-96, 216-28.)   The Second and Third Causes of Action (Accounting and Spoliation of Evidence) are not claims at all (federal or state), but potential remedies.   (*Id.* ¶¶ 197-208.)   Likewise not a claim—but a misplaced attempt to compel discovery—is the Fourth Cause of Action (Declaratory Judgment) for an order requiring Credit Suisse to produce certain documents to aid Plaintiff's compliance with FATCA.   (*Id.* ¶¶ 209-15.)

---

[16]  *See Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) ("Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."); *BTG Patent Holdings, LLC v. Bag2Go, GmbH*, 2016 WL 4249948, at *1320 (S.D. Fla. Jun. 9, 2016) ("even assuming Florida's long-arm statute had been satisfied, BTG does not allege any conduct expressly aimed at Florida such that the Court may exercise personal jurisdiction over Bag2Go and Reh in line with the Due Process Clause of the Fourteenth Amendment."); *Atmos Nation LLC v. Alibaba Group Holding Ltd.*, 2016 WL 1028332, at *5 (S.D. Fla. Mar. 15, 2016) (Moore, J.) (same).

[17]  *Thompson*, 174 F. Supp. 3d at 1337, citing *Fraser*, 594 F.3d at 848-49 (federal long-arm jurisdiction exists where "two essential conditions are met: (1) plaintiff's claims must "arise under federal law;" and, (2) the exercise of jurisdiction must be consistent with the Constitution and laws of the United States.").

[18]  *Hill v. Marston*, 13 F.3d 1548, 1549 (11th Cir. 1994) ("As a general rule, a case 'arises under' federal law only if it is federal law that creates the cause of action.").

## II.   THIS ACTION SHOULD BE DISMISSED UNDER THE *FORUM NON CONVENIENS* DOCTRINE.

This action should also be dismissed under the *forum non conveniens* doctrine ("FNC"). That doctrine "authorizes a court with venue to decline to exercise its jurisdiction when the parties' and the court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried elsewhere."[19]   The party seeking FNC dismissal must "demonstrate (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."[20]   This action presents a quintessential case for FNC dismissal.   (*See* Doc. 23, at 13-19.)

### A.   Switzerland is an Adequate Alternative Forum.

There can be no legitimate dispute that Switzerland is an available and adequate alternative forum for this dispute.[21]   It is "available" because CSAG and CSTAG are both subject and consent to jurisdiction in Switzerland.[22]   (Romerio Dec. ¶15; Huffman Dec. ¶9.)   It is adequate because "it provides for litigation of the subject matter of the dispute and potentially offers redress for Plaintiffs' injuries,"[23] and a remedy not "so clearly inadequate or unsatisfactory

---

[19]   *Liquidation Comm'n of Banco Int'l, S.A. v. Alvarez Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008).

[20]   *GDC Acquisitions, LLC v. Government of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014), quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001).

[21]   *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (holding that an alternative forum must be both available and adequate, and that the two issues "warrant separate consideration."); *Leon*, 251 F.3d at 1311 (same).

[22]   *Id.*

[23]   *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009).

that it is no remedy at all."[24]   Plaintiff seeks information concerning, and to hold Credit Suisse liable for any transfers out of, various Swiss bank accounts.   (Compl. ¶ 1.)   Switzerland recognizes causes of action that could provide similar relief.  (Romerio Dec. ¶16.)  That is more than sufficient to establish that Switzerland is an adequate alternative forum—as numerous courts have held.[25]

### B.   The Public- and Private-Interest Factors Heavily Favor Switzerland.

The private-interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."[26]   These considerations overwhelmingly favor FNC dismissal here.

As the Eleventh Circuit has stated, "[p]erhaps the most important 'private interest' of the litigants is access to evidence."[27]  Here, Switzerland offers "'superior access to sources of proof,' thus favoring dismissal."[28]

---

[24]   *Piper Aircraft Co. v. Reyno*, 454 U.S. 253, 254 (1981); *Tazoe*, 631 F.3d at 1330-31 (same); *see also Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) ("An adequate forum need not be a perfect forum.").

[25]   *See, e.g.*, *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1175-77 (10th Cir. 2009) (affirming district court's conclusion that Switzerland was adequate forum); *Dickson Marine, Inc. v. Panalpina*, 179 F.3d 331, 342 (5th Cir. 1999) (same); *Medicor AG v. Arterial Vascular Eng'g*, 141 F.3d 1177 (9th Cir. 1998) (same); *Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 304 (S.D.N.Y. 2007) ("[C]ourts in this circuit have repeatedly found that Switzerland is an adequate forum for adjudication of civil disputes . . . .").

[26]   *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1292 (11th Cir. 2009).

[27]   *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).

[28]   *Tazoe*, 631 F.3d at 1331; *see also Tarasewicz v. Royal Caribbean Cruises Ltd.*, 2015 WL 3970546, at *15 (S.D. Fla. Jun. 30, 2015) ("access to evidence and witnesses and the relative costs associated with discovery weigh solidly in favor of dismissal.").

13

Plaintiff's five causes of action all seek document production as their primary remedy, demand damages for alleged document destruction, or assert claims that can be proved largely by documentary evidence.   (Compl.  ¶¶ 190-228.)   But those documents are in Switzerland. (Huffman Dec. ¶ 10.)   The parties would face significant legal and procedural obstacles in obtaining documents from Switzerland for use in this Court.   Any discovery in Switzerland would need to be conducted under the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").  (Romerio Dec. ¶¶ 18-19.)  Swiss law prohibits individuals from cooperating with foreign courts in collecting evidence outside the Hague Convention process.  (*Id.* ¶ 23.)  And document production under the Hague Convention is a cumbersome and typically time-consuming process that could take as long as a year.  (*Id.* ¶ 22.) A Swiss litigation would not face the same obstacles.  (*Id.* ¶¶ 9, 24.)

Obtaining witness testimony here would be even more problematic.   There is no indication in the Complaint that any percipient witnesses reside outside Europe (much less in the U.S.), and many are likely in Switzerland.   Private attorneys are prohibited by Swiss law from conducting depositions or obtaining written declarations in Switzerland for use in a foreign proceeding.  (*Id.* ¶ 23.)  But a Swiss court is empowered to compel the testimony of any witness living in Switzerland (*id.* ¶ 9), and for witnesses (like Fuhr and Luis Marimón) living elsewhere in Europe (like Germany, where they are already litigating) who are willing to testify voluntarily, their trip to Switzerland would be far easier and less expensive than traveling to Florida.

Practical problems likewise favor dismissal.   As the Complaint's exhibits make clear, trying this case here would require extensive translation of both documents and testimony from

German to English; that is not a concern in Switzerland where German is one of three official languages.  (Romerio Dec. ¶ 10.)[29]

Thus, the private factors weigh heavily in favor of dismissal.  And Plaintiff's choice of forum does not change that analysis for two reasons.  *First*, that choice should be accorded no deference, because Plaintiff (i) is obviously forum-shopping, having been formed less than a month before commencing this action as a resident of a state with no connection to the claims[30]; (ii) is acting on behalf of others (Compl. ¶ 8)[31]; and (iii) allegedly represents mostly the interests of foreign citizens (the Sutors and Fuhr), one of which (Fuhr) is a party to related litigation in Germany.[32]  *Second*, even where a Plaintiff's choice of forum is entitled to deference, that "choice alone is not dispositive."[33]  Forum choice "is ultimately only a proxy for determining the convenience of litigating in one forum instead of another [and], at bottom, the central focus of the forum non conveniens inquiry is convenience."[34]  Plaintiff's choice of Florida cannot

---

[29]  *Tazoe*, 631 F.3d at 1333 (holding that private-interest factors favored dismissal because, among other reasons, "[a] trial in the Southern District of Florida will cause significant translation costs.").

[30]  *See Tarasewicz*, 2015 WL 3970546, at *12 ("[T]he more it appears plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a [FNC] motion by showing that convenience would be better served by litigating in another country's courts."), quoting *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

[31]  *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("Plaintiffs' choice of forum is also entitled to less deference where, as here, they are suing in a representative capacity.").

[32]  *See Leon*, 251 F.3d at 1311 ("a weaker presumption [of convenience] appl[ies] in cases brought by foreign plaintiffs."); *Windt v. Qwest Comm. Int'l, Inc.*, 529 F.3d 183, 191 (3d Cir. 2008) (holding that district court did not abuse discretion in according foreign plaintiffs' forum choice "low degree of deference" where they were involved in related foreign litigation).

[33]  *Aldana*, 578 F.3d at 1293.

[34]  *Id.*, 578 F.3d at 1294, quoting *Piper*, 454 U.S. at 249-50.

overcome the substantial inconvenience posed by litigating a Swiss-dominated action in the United States.

The public-interest factors likewise heavily favor trial in Switzerland.[35]  With this Court shouldering "one of the busiest dockets in the country[,] . . . the administrative burden for a matter with little connection to Florida is a concern."[36]  Nor should Floridians be burdened with jury duty in an action predominantly for foreign beneficiaries, and against Swiss banks concerning Swiss bank accounts.  Conversely, "Switzerland possesses a strong interest in regulating the conduct of banks within its borders."[37]

The court's synopsis in granting FNC dismissal in *LaSala*—a similar case involving alleged wrongful transfers from Swiss bank accounts—applies equally here:

> This is at its heart a dispute involving what Swiss banking representatives did and what they knew when they did these things.  The knowledge plaintiffs allege on the part of the Bank, both concerning its legal obligations and concerning the transfers themselves, resides in the minds of Bank representatives in Switzerland. If, to quote *Gilbert*, it is preferable that "localized controversies" be "decided at home," Switzerland is home for the controversies generated by the plaintiffs' complaint.[38]

## C.    Plaintiff Can Bring This Action in Switzerland Without Inconvenience or Prejudice.

Plaintiff, or its members or the Wertheim/Bäuml heirs it claims to represent, can bring this action in Switzerland without "undue" inconvenience or prejudice.  (Romerio Dec. ¶¶ 7, 17.)

---

[35]    *Tazoe*, 631 F.3d 1333 (public factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty"), quoting *Piper Aircraft*, 454 U.S. at 241 n.6.

[36]    *Cleveland v. Kerzner Int'l Resorts, Inc.*, 2015 WL 5695276, at *7 (S.D. Fla. Sept. 29, 2015).

[37]    *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 229 (S.D.N.Y. 2007).

[38]    *Id.* at 229-230, quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

III.     **VENUE IS IMPROPER IN THE SOUTHERN DISTRICT OF FLORIDA.**

28 U.S.C. § 1406(a) requires dismissal where venue is improper, and Plaintiff bears the burden of showing that venue is proper.[39]  Venue is only proper in a judicial district in which (1) any defendant resides, if all defendants are residents of the state in which the district is located, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) any defendant is subject to the court's personal jurisdiction with respect to such action, if there is no district in which an action may otherwise be brought.  *See* 28 U.S.C. § 1391.  Here, venue is improper, and thus the action should be dismissed, because (i) CSAG and CSTAG are neither Florida residents nor subject to personal jurisdiction here; and (ii) no event giving rise to Plaintiff's claims occurred in this district.  *See supra* at 9-11.[40]

IV.     **PLAINTIFF HAS FAILED TO JOIN INDISPENSABLE PARTIES.**

The Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(7) because the Sutors and Tim Fuhr are indispensable parties under Fed. R. Civ. P. 19.  According to Complaint Exhibit 3, the Sutors and Fuhr own a 25% and 32.5% interest, respectively, in the Wertheim/Bäuml assets.  (*See* Ex. B.)  Plaintiff acknowledges the Sutors' and Fuhr's interests, but claims to be acting with their authority.  (Compl. ¶ 8.)  Under Fed. R. Civ. P. 17(a)(1), however, claims must be prosecuted by the real party in interest, and Plaintiff is not the type of entity (e.g., an executor or trustee) that Rule 17 permits to bring suit on the Sutors' or Fuhr's

---

[39]  *See Bell v. United Air Lines, Inc.*, 2011 WL 11048116, at *1 (S.D. Fla. Nov. 30, 2011).

[40]  *See, e.g., Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1358 (S.D. Fla. 2009) (venue improper where plaintiff failed to allege relevant conduct occurred in Southern District of Florida).

behalf.[41]   Thus, the Sutors and Fuhr are "required parties" under Rule 19(a)(1)(B)(ii) because they would have "an interest relating to the subject of the action" and Credit Suisse would face the risk of "multiple, or otherwise inconsistent obligations because of the interest," e.g., should the Sutors or Fuhr file a similar suit against Credit Suisse elsewhere.[42]

But these required parties cannot be joined as plaintiffs because their joinder would "deprive the court of subject-matter jurisdiction."  *See* Fed. R. Civ. P. 19(a).  The Sutors and Fuhr, like defendants, are foreign citizens and their joinder would destroy diversity jurisdiction[43]—assuming there is currently diversity jurisdiction.[44]   Nor is there federal jurisdiction under the Edge Act or FATCA, as the Complaint alleges.  (Compl. ¶¶ 16, 18.)  The Edge Act does not apply because no party is a "corporation organized under the laws of the

---

[41]   *See Thomas v. New Castle County Police Dep't*, 2016 WL 791294, at *2 (D. Del. Feb. 29, 2016) ("Rule 17(a)(1) lists parties who may 'sue in their own names without joining the person for whose benefit the action is brought.'").

[42]   *See* Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment ("Rule 19 Advisory Committee Note") (Rule 19(a)(1)(B)(ii) "recognizes the need for considering whether a party may be left, after adjudication, in a position where a person not joined can subject him to a double or otherwise inconsistent liability."); *see also Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 2017 WL 816224, at *5 (11th Cir. Mar. 2, 2017) (Rule 19(a)(1) is "designed to protect not only the interests of the parties, but also the interests of the public in avoiding repeated lawsuits on the same essential subject matter.").

[43]   *See Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) ("*Molinos*") ("alienage jurisdiction prohibits an alien from suing another alien in federal court unless the suit includes United States citizens as plaintiffs and defendants."); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) ("It is a standard rule that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides.").

[44]   The potential that one or more of Plaintiff's members are foreign citizens raises doubt as to whether this Court currently has diversity jurisdiction (*see Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1022, 1022 (11th Cir. 2004) ("a limited liability company is a citizen of any state of which a member of the company is a citizen.")), but Credit Suisse is not making that argument at this time.

United States [or] Federal Reserve bank."[45]   And FATCA is even farther afield.  As one court recently held, Congress passed FATCA in 2010 to improve compliance with tax laws by U.S. taxpayers holding foreign accounts, requiring both taxpayers and foreign financial institutions to disclose certain information to the IRS.[46]   Nothing in FATCA's text gives a taxpayer the right to see the information an institution reports to the IRS, or provides any federal court authority to compel an institution to produce such information to an account holder.

Where, as here, a required party cannot be joined, "the court must then proceed to Rule 19(b) and consider whether in 'equity and good conscience,' the suit should proceed without the [required] party."[47]   This requires the Court to assess whether (i) a judgment rendered in the Sutors' or Fuhr's absence would prejudice them or other parties; (ii) any prejudice could be lessened by fashioning the relief granted; (iii) the judgment without joinder would be adequate; and (iv) Plaintiff would have an alternative remedy if the case were dismissed.[48]   These factors clearly favor dismissal over proceeding without the Sutors and Fuhr.

*First*, a judgment without joinder here would certainly prejudice Credit Suisse and could prejudice the Sutors/Fuhr.  Win or lose, there is a "serious" threat that Credit Suisse would be "exposed to a fresh action" by the Sutors/Fuhr[49]—especially because any judgment against Credit Suisse would be unenforceable in Switzerland.  (Romerio Dec. ¶¶ 25-28.)  And if Credit Suisse were to prevail, any attempt by the Sutors/Fuhr to pursue their alleged rights in a separate

---

[45]   12 U.S.C. § 632; *see also R.W. Sawant & Co. v. Ben Kozloff, Inc.*, 507 F. Supp. 614, 617-18 (N.D. Ill. 1981) (holding no Edge Act jurisdiction for action involving international banking where parties were foreign-bank and various state-law entities).

[46]   *Crawford v. United States Dep't of Treasury*, 2016 WL 1642968, at *2 (S.D. Ohio Apr. 26, 2016); *accord Alsheikh v. Lew*, 2016 WL 4426960, at *1 (N.D. Cal. Aug. 22, 2016) (same).

[47]   *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999).

[48]   *Id.*; *see also Thermoset Corp.*, 2017 WL 816224, at *4-5.

[49]   *See Molinos*, 633 F.3d at 1344, quoting Rule 19 Advisory Committee Note.

action would be prejudiced by this Court's decision in Credit Suisse's favor.  *Second*, there is no way to fashion a judgment without joinder here that would avoid or lessen the prejudice to Credit Suisse and the Sutors/Fuhr, and thus any such judgment would be inadequate.[50]  *Third*, Plaintiff has an alternative remedy: if this case were dismissed, Plaintiff or its members or the alleged Wertheim/Bäuml heirs "could sue effectively in another forum where better joinder would be possible," such as the courts of Switzerland.[51]  (Romerio Dec. ¶¶ 13-17.)  Thus, the Sutors and Fuhr are indispensable parties who cannot be joined, necessitating dismissal.

## CONCLUSION

The Court should dismiss this Swiss-based action.  Credit Suisse is not subject to personal jurisdiction here; the Swiss courts are an adequate and more convenient forum for this dispute; venue is improper in this district; and Plaintiff has failed to join the Sutors and Fuhr, who are indispensable parties.  Each of those four bases requires dismissal.

Dated:  April 7, 2017.

Respectfully submitted,

/s/ Bruce J. Berman
Bruce J. Berman (Fla. Bar No. 159280)
bberman@carltonfields.com
Stephanie A. Fichera (Fla. Bar No. 55813)
sfichera@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
100 Southeast Second Street, Ste. 4200
Miami, Florida  33131
Tel: (305) 530-0050
Fax: (305) 530-0055

---

[50]  *See Thermoset Corp.*, 2017 WL 816224, at *5 ("[t]he second subsection (b) factor . . . meshes with the third factor."); Rule 19 Advisory Committee Note ("[t]he third factor . . . meshes with the other factors, especially the 'shaping of relief' mentioned under the second factor.").

[51]  Rule 19 Advisory Committee Note; *see also Thermoset Corp.*, 2017 WL 816224, at *5 (holding that plaintiff had adequate remedy because it could pursue its claims in state court).

Jonathan Rosenberg (*pro hac vice*)
jrosenberg@omm.com
Daniel L. Cantor (*pro hac vice*)
dcantor@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Defendants Credit Suisse AG
and Credit Suisse Trust AG*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically on this 7th day of April, 2017, with the Clerk by using the CM/ECF system, which will send notification of such filing to all attorneys of record on the service list below.

/s/ Bruce J. Berman
Bruce J. Berman (Fla. Bar No. 159280)
bberman@carltonfields.com

**SERVICE LIST**

*Wertheim Jewish Education Trust, LLC v. Credit Suisse AG, et al.*
Case No. 17-60120-CIV-MOORE/GARBER

Yechezkel Rodal, Esq.
Rodal Law, P.A.
3201 Griffin Road, Suite 203
Dania Beach, Florida 33312
Telephone: (954) 367-5308
Facsimile: (954) 900-1208
Email: chezky@Rodallaw.com

Kenneth F. McCallion
McCallion & Associates LLP
100 Park Avenue, 16th Floor
New York, NY 10017
Telephone: (646) 366-0880
Email: kfm@mccallionlaw.com

*Counsel for Plaintiff*

Michael I. Goldberg
Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Email  michael.goldberg@akerman.com
         charlene.cerda@akerman.com

Robert J. Liubicic *(Admitted Pro Hac Vice)*
Samir L. Vora *(Admitted Pro Hac Vice)*
Milbank, Tweed, Hadley & McCloy LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Tel: (424) 386-4000
Fax: (213) 629-5063
Email: rliubicic@milbank.com
         svora@milbank.com

*Counsel for Defendant Deutsche Bank AG*